**STATE of Utah, Plaintiff and Respondent,**

v.

**Richard McGRATH, Defendant and Appellant.**

No. 19878.

Supreme Court of Utah.

Jan. 6, 1988.

William R. Russell, Salt Lake City, for defendant and appellant.

David L. Wilkinson, David J. Schwendiman, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

This is a case of first impression, being the first appeal of a conviction under the Utah Racketeering Influences and Criminal Enterprise Act,[1] Utah Code Ann. §§ 76–10–1601 to –1609 (1978, Supp.1986), sometimes referred to as RICE. Defendant Richard McGrath was charged by a Weber County grand jury in nine separate indictments with eight counts of distribution of a con-

1. In 1987, the Act was retitled "Pattern of Unlawful Activity Act." 1987 Utah Laws ch. 238 § 1. All references and citations to the Act refer to the version in effect at the time of defendant's trial.

trolled substance for value, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1986), and one count of racketeering, in violation of section 76–10–1603. Upon motion of the State, the trial court consolidated all of the indictments for a single trial. At the close of the State's case, the trial court granted defendant's motion to amend count VIII to *attempted* distribution of a controlled substance for value. The jury returned verdicts of not guilty on counts I through VII (distribution), but convicted defendant on count VIII (attempted distribution) and count IX (racketeering). Defendant appeals, making several claims of error which we will consider separately.

## I. IMMUNITY

Narcotics officers arrested defendant McGrath after an undercover investigation revealed that he was the main cocaine supplier for Eric Marcus, a lower-level cocaine supplier and street dealer. Prior to trial, defendant and his counsel met with the Weber County Attorney to discuss a plea negotiation in exchange for defendant's cooperation in the ongoing drug investigation. The parties reduced their proposed agreement to writing, but it was not signed by them. Defendant claims that the county attorney verbally granted him transactional immunity for his cooperation. He also claims that based on the understanding that he had been granted immunity, he waived substantial fifth amendment rights by participating in a debriefing.

Defendant moved to have all charges dismissed because of the alleged grant of immunity. However, the trial court found that the county attorney had not granted any immunity through his verbal representations. Furthermore, the court found that the testimony which defendant gave the questioning officers was not in good faith and therefore any agreement for immunity which may have existed failed because of defendant's lack of cooperation. *State v. Ward,* 571 P.2d 1343 (Utah 1977), *cert. denied,* 435 U.S. 1005, 98 S.Ct. 1874, 56 L.Ed.2d 386 (1978). In view of these factual findings, the trial court did not err in its denial of defendant's motion to dismiss. Moreover, defendant has failed to point to

any fact disclosed during the debriefing that was in any way related to the nine indictments brought against him or that was in any way used by the State against him.

## II. CONSOLIDATION OF INDICTMENTS

Defendant contends that the court erred in granting the State's motion to join for a single trial the eight indictments for distribution and the indictment for racketeering because the charges were not closely related in time or incident to the accomplishment of a single criminal objective as required by Rule 9(a), Utah Rules of Criminal Procedure, and Utah Code Ann. § 76–1–401 (1978). The granting of a motion to join offenses for trial rests within the sound discretion of the trial court, and this Court will not interfere with the exercise of that discretion unless it is shown to have been clearly abused. *State v. Peterson,* 681 P.2d 1210 (Utah 1984). We find no abuse of discretion in this instance. The eight charges were for trafficking in drugs, allegedly within a seven-week period while the police were conducting their continuing investigation. In most of the instances, the sales of cocaine were made by Marcus to an undercover agent working for the police. Marcus testified that in each instance he obtained his cocaine from defendant. His records disclosed that over a five-month period, defendant had supplied him with cocaine approximately every other day. Because of the similarity of the offenses charged and the fact that the same persons were involved each time and because the transactions occurred over a relatively brief period of time, we find no error in consolidating the eight indictments for trial. The remaining indictment, which was for racketeering, arose out of the repeated sales by defendant to Marcus; therefore, the joinder of that indictment was likewise proper. The situation here was much different from that in *State v. Gotfrey,* 598 P.2d 1325 (Utah 1979), relied on by defendant, where the defendant was charged with two separate charges of rape which occurred six months apart and in-

volved different victims and a charge of sodomy involving a third victim.

### III. WITNESS COLLUSION

Pursuant to rule 615 of the Utah Rules of Evidence, the court granted defendant's motion to exclude all witnesses from the courtroom. While outside, one of the State's witnesses read an agent's report to refresh his recollection of the events of the evening on which the officers searched Marcus's apartment. He also talked to defendant's roommate (Stoddard) and a detective, who were both witnesses for the State, about what he remembered. Upon discovering this, defendant moved for a mistrial. The court admonished the witnesses to refrain from communicating with each other, found that there was no collusion, and denied defendant's motion. When an exclusion order has been violated, the burden is on the accused to demonstrate that he has been prejudiced to the extent that a mistrial should be granted. *See State v. Carlson,* 635 P.2d 72 (Utah 1981); *State v. Dodge,* 564 P.2d 312 (Utah 1977) (construing similar witness exclusion rule under prior rules of evidence). The witness testified that talking with the other witnesses did not jog his memory in any respect and that the report he read merely confirmed his recollection of what had happened during the search. There was no evidence or suggestion that any witness changed his testimony because of the conversations. We find no abuse of discretion in the court's denial of defendant's motion for a mistrial. We decline defendant's urging that we adopt the position taken in a dissent in *State v. Dodge, supra,* that prejudice is inherent in the violation of an order of exclusion.

### IV. PREJUDICIAL AND IRRELEVANT EVIDENCE

Over defendant's objections, the court admitted into evidence exhibits 18 and 19 which were two sacks containing drug paraphernalia and a number of containers of suspected drugs. The exhibits were part of the evidence seized at the Marcus apartment. Defendant complains that the court erred in admitting the exhibits into evidence because no foundation was laid to show that all of the items in the exhibits were controlled substances. He also complains that rule 403 of the Utah Rules of Evidence required the court to exclude them because they were not relevant to the offenses charged, their probative value was substantially outweighed by the danger of unfair prejudice to defendant, they confused the jury, and they were needlessly cumulative evidence.

The State's expert on controlled substance testing tested only a random sample of the items within the exhibit. The sample was approximately equal to the square root of the number of items. It is on this basis that defendant challenges the adequacy of the foundation for admitting the exhibits. We need not address the sufficiency of the testing procedure employed because other competent evidence also contributed to the foundation necessary for the admission of the exhibits. Marcus testified that the items were drugs. They were seized in a drug raid along with other known controlled substances. They were also packaged in the same manner as the other known controlled substances.

The exhibits were relevant because they corroborated Marcus's and Stoddard's testimony that defendant was Marcus's supplier and that there was an "enterprise" (see section VI *infra*). The exhibits were not needlessly cumulative because they helped establish the extent to which defendant and Marcus had created an enterprise for trafficking in drugs. We will not interfere with the trial court's ruling admitting assertedly inflammatory evidence unless it appears that the trial judge so abused his discretion as to create a likelihood that injustice resulted. *State v. Danker,* 599 P.2d 518 (Utah 1979). We find no abuse here.

### V. PATTERN OF RACKETEERING ACTIVITY

Defendant contends that because the State failed to convict him on at least two of the eight indictments which charged him with distribution of a controlled substance,

it failed to prove that he engaged in a "pattern of racketeering activity" necessary to convict under section 76–10–1603. "Pattern of racketeering activity" is defined by section 76–10–1602(4)[2] as "engaging in at least two episodes of racketeering conduct which have the same or similar objectives, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." Acts constituting racketeering under section 76–10–1602(1) do not need to be charged or indicted, and under subsection (w) they include "soliciting, requesting, commanding, encouraging, or intentionally aiding another in commission" of any of the illegal activities listed in section 76–10–1602.

 We are cognizant of federal cases that reverse convictions under the Racketeer Influences and Corrupt Organizations Act, 18 U.S.C. §§ 1962–1968 (RICO), after the same court has reversed the conviction of a predicate crime upon which the jury may have relied in reaching the RICO conviction. *See, e.g., United States v. Brown*, 583 F.2d 659 (3d Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456, *reh'g denied*, 441 U.S. 917, 99 S.Ct. 2019, 60 L.Ed.2d 389 (1979); *United States v. Ruggiero*, 726 F.2d 913 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). However, those cases have no application here since none of the predicate acts which support the racketeering charge have been invalidated. It is true that in the instant case, the jury acquitted defendant on seven indictments for distributing a controlled substance. The eighth indictment charging him with that crime was amended to an attempt to distribute, and he was convicted of that charge. However, we are unable to subscribe to defendant's argument that the jury's verdict indicates that the State did not prove two episodes of racketeering conduct but only one.

The indictment for racketeering charges defendant with racketeering between February 15 and July 15, 1983, in Weber County, but does not refer to the eight alleged sales which formed the basis for the eight indictments for distribution. The instruction given to the jury on racketeering (No. 8) did not limit the jury's deliberations to the eight incidents charged in the indictments for distribution which allegedly occurred on specific dates ranging from May 15 to July 15, 1983. Instead, instruction No. 8 was much broader. It permitted the jury to consider any two occasions between February 15 and July 15, 1983, when defendant intentionally supplied cocaine to Marcus. In contrast, the instruction on distribution for value (No. 6) required the jury to find that Marcus (not defendant) made sales of cocaine to the person alleged in the indictment in question on the date alleged; that defendant was a principal in that sale because he was a wholesaler of the cocaine intentionally supplied to Marcus; that "defendant intended that it was reasonably certain that Mr. Marcus would further wholesale the cocaine to individuals such as Mr. Hastie or others, who would eventually retail it"; that defendant, as an individual wholesaler, knew in general the type of sales that would be made; that defendant "intended that Mr. Marcus would make illegal sales of the general type that would occur on opportunity"; and that "the total of the evidence must be that it is reasonable to conclude that each are legally responsible for the intentional furtherance of the crime of reselling all or part of said inventory, and guilty thereof." The instruction cautioned, however, that "the mere fact, if it is a fact, that Mr. McGrath with reasonable certainty delivered, or attempted to deliver, or helped arrange for Mr. Marcus to have cocaine available for sale, would not alone be sufficient."

In summary, conviction of defendant on the indictments for distribution required proof of many elements that were not required in instruction No. 8 on racketeering which simply required proof that on at least two occasions, defendant sold cocaine to Marcus. Counsel for defendant recognizes, in his brief, the stringent requirements of proving defendant guilty of distribution. There, he explains the acquittals: "Seven of the indictments were based upon

**2.** The 1987 amendments replaced the phrase "pattern of racketeering" with "pattern of un-

lawful activity," which is currently defined in section 76–10–1602(3).

sales made by Eric Marcus, of which the Defendant had no knowledge.... [D]efendant ... did [not] know the person to whom the sales were made." It is therefore entirely consistent that the jury could acquit defendant on some or all of the indictments for distribution and yet find him guilty of supplying cocaine to Marcus on any two occasions during a five-month period.

In arguing his posttrial motion for arrest of judgment, defendant's counsel conceded that the jury could have reasonably found from the evidence that there were at least two episodes of racketeering conduct. The main ground for the motion was that the evidence was insufficient to prove the existence of an enterprise. Counsel stated in his argument:

> There was evidence adduced at trial, I will concede, that the jury could reasonably infer therefrom that there was at least a couple of transactions that went on, two episodes, two predicate crimes.
>
> ....
>
> Your Honor, that is my main concern that expressed in *U.S. v. Anderson* is that what was adduced at trial was only a showing that the defendant engaged in a pattern of racketeering activity, that he distributed controlled substances, that he received from them—he received for them something of value. I submit to the court that there was no evidence that there was any organization or association, the words the Chief Justice of the United States Supreme Court used in defining enterprise in the *Turkette* case. There was no evidence of proof of sharing or splitting.
>
> ....
>
> I don't believe there is any interpretation in the evidence that can show anything more than that the predicate crimes occurred, and that there was no evidence that there was an enterprise within the requisite meaning of that word that we have to have to satisfy the fifth amendment.
>
> ....
>
> All I'm saying is, is then the proof that was adduced in this case it was shown

pretty clearly that the defendant exercised in a pattern of racketeering activity; that's what those 74 things are. The 74 incidents are a pattern of racketeering activity.

The seventy-four incidents referred to by counsel for defendant are the seventy-four transactions between defendant and Marcus which were entered in a ledger book kept by Marcus (see section VI *infra*).

No objection was made to the giving of instructions No. 6 or 8 by defendant. While we recognize that a criminal defendant is entitled to notice of the charges against him so that he can adequately defend against them, no objection was raised in the trial court by defendant as to lack of notice, nor was any surprise claimed. On this appeal, defendant does not complain of lack of notice or surprise. As heretofore pointed out, section 76–10–1602(1) provides that the acts constituting racketeering do not need to be charged or indicted. Since jury instruction No. 8 on racketeering did not limit the jury to a consideration of the eight charges of distribution or attempted distribution, the jury's verdict does not indicate that the State did not prove two episodes of racketeering conduct.

### VI. ENTERPRISE

■ Lastly, McGrath contends that the State failed to establish the "enterprise" element of the crime of racketeering. "Enterprise" is defined in section 76–10–1602(3) [3] as "any individual, sole proprietorship, partnership, corporation, business trust, association, or other legal entity, and *any union or group of individuals associated in fact* although not a legal entity, and includes illicit as well as licit entities." (Emphasis added.) To avoid running afoul of constitutional prohibitions against double jeopardy, the federal courts have held under the federal Racketeer Influences and Corrupt Organizations Act that the government must prove at least one element beyond the pattern of racketeering activity. That additional element is the existence of an "enterprise." Defendant argues that the State adduced evidence that tended to show at most the existence only of a pat-

---

**3.** This definition is found at section 76–10– 1602(2) in the statute as amended.

tern of racketeering activity, but not an enterprise. In *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the United States Supreme Court wrote:

> That a wholly criminal enterprise comes within the ambit of the statute does not mean that a "pattern of racketeering activity" is an "enterprise." In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." ... While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

*Id.* at 583, 101 S.Ct. at 2528 (footnote omitted).

■ While we agree with the United States Supreme Court's interpretation of the federal statute and hold that both the "pattern of racketeering activity" and "enterprise" elements must be established to convict under the Utah statute, we disagree with defendant's contention that the State failed to introduce evidence of the existence of an enterprise. There is sufficient evidence in the record which, when viewed in the light most favorable to the jury verdict, establishes the existence of an enterprise. Defendant and Marcus had an ongoing association in fact for the purpose of making money from the sale of controlled substances. Defendant regularly "fronted" drugs to Marcus, who in turn sold them to individual users. When the two men experienced difficulty keeping track of their accounts, they agreed to keep written accounts of their numerous transactions. A ledger book kept by Marcus showed seventy-four transactions between him and defendant. This association was much more than an isolated transaction between an independent seller and buyer conducted at arm's length. Defendant often had others deliver for him and compensated them for their services. Marcus bought his supplies from other sources only when defendant was unavailable. The two men functioned as a "continuing unit for a common purpose of engaging in a course of conduct." *United States v. Dickens,* 695 F.2d 765, 773 (3d Cir.1982), *cert. denied,* 460 U.S. 1092, 103 S.Ct. 1792, 76 L.Ed.2d 359 (1983). These facts show an ongoing enterprise the purpose of which was to traffic in controlled substances. Defendant's participation in this enterprise, when combined with his acts constituting a pattern of racketeering activity, establishes the necessary elements to convict under section 76–10–1603(2) or (3).

The jury's verdict is supported by the evidence, and there was no error in the trial court's refusal to grant defendant's motions to dismiss and for an arrest of judgment. Conviction affirmed.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, Associate C.J., concurs in the result.