2002 UT 9

**STATE of Utah, Plaintiff and Appellee,**

v.

**Albert J. CRAMER, Defendant and Appellant.**

**No. 991065.**

Supreme Court of Utah.

Jan. 25, 2002.

Mark L. Shurtleff, Att'y Gen., Kenneth A. Bronston, Asst. Att'y Gen., Susan Hunt, Salt Lake City, for plaintiff.

Gregory G. Skordas, Stephanie Ames, Salt Lake City, for defendant.

DURRANT, Justice.

¶ 1 Albert J. Cramer appeals his conviction on two counts of aggravated sexual abuse of a child, raising two independent claims. The first raises the question of whether the Utah Constitution entitles an accused to full disclosure of the privileged medical records of a victim who testifies against the accused. In a pretrial ruling, the trial court denied Cramer's request that his attorney be permitted to evaluate the child victim's medical records to determine whether any of them were material to his defense. Instead, the court screened the records in camera. Based on its in camera review, the court did not disclose any of the records to Cramer, having determined that none of them was material to his defense. We hold that this in camera review did not violate Cramer's rights under the Utah Constitution.

¶ 2 Cramer's second claim on appeal concerns a spectator's statements to the child victim while the child waited to testify against Cramer. The statements occurred outside the court's presence, the court having excluded the child and other witnesses from the courtroom pursuant to Cramer's request. Upon learning of the spectator's statements, Cramer moved for a new trial, alleging that the spectator told the child victim about (1) other witnesses' testimony and (2) Cramer's abuse of the spectator's children in an unrelated matter. The court rejected Cramer's motion, determining that the evidence Cramer presented in support of his motion did not prove prejudice sufficient to warrant a new trial. We conclude that the trial court did not exceed its discretion in denying Cramer's motion for a new trial.

¶ 3 Accordingly, we affirm the trial court's rulings and Cramer's convictions.

## BACKGROUND

¶ 4 On October 21, 1996, Cramer was designated a Court Appointed Special Advocate ("CASA") for M.L. At the time of Cramer's appointment, M.L. was approximately seven years, three months old, and was housed at the University of Utah Neuropsychiatric Institute ("UNI"). In his role as M.L.'s CASA, Cramer often took M.L. on outings.

¶ 5 After M.L.'s adoption, M.L.'s adoptive mother, sensing "something wasn't right" with him, took M.L. for an interview with Detective Alex Huggard of the Murray Police Department on August 8, 1997. During this initial interview, M.L. denied that Cramer had inappropriately touched him.

¶ 6 In March 1998, the Division of Family Services called Detective Huggard and suggested he interview M.L. a second time. During this second interview, conducted on March 6, 1998, M.L. claimed that Cramer had inappropriately touched him. Cramer was subsequently arrested and charged with two counts of aggravated sexual abuse of a child. On August 13, 1998, M.L. testified at a preliminary hearing that Cramer had touched M.L.'s "front private part"—the part "use[d] to go to the bathroom"—"more than one time." M.L. also testified that Cramer touched his "back private part." According to M.L., Cramer touched M.L.'s "private parts" sometimes over M.L.'s clothes and sometimes under them.

## I. MOTION TO COMPEL DISCLOSURE OF M.L.'S UNI RECORDS

¶ 7 Before trial, Cramer filed a motion to compel disclosure of M.L.'s records maintained by UNI. Cramer argued that this information was critical to his defense since the case depended on M.L.'s credibility. In his memorandum in support of this motion, Cramer requested full disclosure of M.L.'s records, but at a hearing on this motion, Cramer's attorney stated that, at a minimum, the court should conduct an in camera review of the records. At this hearing, M.L.'s guardian ad litem argued against disclosure on the ground that the records were privileged medical records. See Utah R. Evid. 506(c) (allowing guardian to claim privilege on behalf of protected person). The court ruled that it would conduct an in camera review of the records pursuant to *Pennsylva-*

*nia v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), in which the U.S. Supreme Court held that the Due Process Clause of the Fourteenth Amendment did not entitle an accused to "conduct his own search of the State's files," whether or not the files contain privileged information. *Id.* at 56 & n. 15, 57–60, 107 S.Ct. 989 (ruling that, when an accused establishes a sufficient basis to justify an in camera review, a court must conduct the review and disclose material information to the accused). Upon conducting an in camera review, the trial court ruled that none of the records was "material" to the defense within the meaning of *Ritchie,* and thus did not disclose any of the records to Cramer.

## II. MOTION FOR A NEW TRIAL BASED ON SPECTATOR'S STATEMENTS TO M.L. AT CRAMER'S TRIAL

¶ 8 At the beginning of Cramer's trial, the court granted Cramer's request under Utah Rule of Evidence 615, which provides, subject to exceptions, that "[a]t the request of a party[,] the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. . . ." Pursuant to this ruling, the court also instructed the prospective witnesses, including M.L.,[1] not to speak to anyone or let anyone approach them about the case. Accordingly, M.L. waited to testify outside the courtroom.

¶ 9 Susan Mineer, who was not a witness, attended the trial. In an unrelated case, Cramer pleaded guilty to two misdemeanor charges involving two of Mineer's sons. During breaks in Cramer's trial, Mineer spoke to M.L. outside the court's presence while he waited to testify against Cramer.

¶ 10 M.L. testified at trial that Cramer touched his front and back "private parts," both over and under his clothing. When asked to describe how Cramer would touch M.L.'s "front private part," M.L. testified that Cramer "would grab it hard and ask me if it'd felt good [and] rub on it." When asked

why he had not told Detective Huggard about Cramer's abuse in the first interview, M.L. explained that he had been "scared" he would get in trouble and that he revealed the abuse when his adoptive parents reassured him "everything would be fine."

¶ 11 Cramer's attorney then cross-examined M.L. about the differences among his statements. M.L. admitted that when he testified in the preliminary hearing about Cramer touching M.L.'s "back private part" he did not mention that Cramer had "pinched" it. However, M.L. claimed that he had mentioned in the preliminary hearing that Cramer, when grabbing M.L.'s "front private part," grabbed it "hard" and asked if it "felt good."

¶ 12 The jury convicted Cramer on the two counts of aggravated sexual abuse. Thereafter, Cramer moved for a new trial, claiming that Mineer's statements to the child violated the court's exclusion order under rule 615 and that this violation prejudiced him by causing the child to substantially change his earlier statements regarding the crime. In support of this motion, Cramer submitted affidavits from two witnesses who attended the trial: his wife, Diane Cramer, and Jennifer Durham, who had known Cramer since the time he worked with her father "years ago."

¶ 13 In response to Cramer's motion for a new trial, the court conducted a hearing. At this hearing, Cramer called Diane Cramer and Durham to testify. Diane Cramer testified that on the first day of trial Mineer came into the courtroom and "stated she was talking to [M.L.], and she said [Cramer] had done this to her two boys and one of them was dead." Jennifer Durham testified that during breaks in Cramer's trial, Mineer rushed out of the courtroom to give M.L. and his family, who were waiting in another room, a "word-for-word account" of the other witnesses' testimony. Durham characterized Mineer's accounts as being "accurate." On cross-examination, however, Durham conceded that she heard only "bits and pieces"

---

1. We note that rule 615 "does not authorize exclusion of a victim in a criminal . . . proceeding where the prosecutor agrees with the victim's presence[.]" Utah R. Evid. 615(1)(d). As the State does not claim it "agree[d] with" M.L.'s presence, we assume the trial court properly excluded M.L. from the courtroom during the other witnesses' testimony.

of what Mineer said to M.L. and his family, and further conceded she could not recall "specifically" what was said. When questioned as to the number of times she saw Mineer conversing with M.L. and his family, Durham initially stated "[m]ore than one time," then, when questioned further, stated, "three, four [times], maybe," then, when pressed, stated, "[p]robably at least once."

¶ 14 Following this testimony, Cramer argued that Mineer's contact with M.L violated rule 615 and prejudicially affected M.L.'s subsequent testimony, thus entitling him to a new trial. To this end, Cramer compared M.L's trial testimony with his statements at the two earlier interviews and at the preliminary hearing. Specifically, Cramer argued that M.L.'s statements became progressively more damaging to Cramer as follows: (1) in the first interview, conducted August 8, 1997, M.L. denied that Cramer had inappropriately touched him; (2) in the second interview, conducted on March 6, 1998, M.L. claimed that Cramer had inappropriately touched him; (3) at the preliminary hearing, conducted on August 13, 1998, M.L. testified that Cramer would "rub" and "feel" M.L.'s "private parts;" and (4) following the exchange with Mineer, M.L. testified for the first time at trial that Cramer had "pinched" his "back private part" and asked M.L. whether the touching "felt good." Cramer characterized M.L.'s testimony at trial as "completely and drastically different" from M.L's earlier accounts and argued that Mineer's contact with M.L. was the source of the difference. Attempting to establish this causal link, Cramer argued that because Mineer did not explain to M.L. how her son died, "it left [sic] the inference that Mr. Cramer['s earlier abuse] had something to do with [the death]," and "someone as young as [M.L.]" would, as a result, have "the impression . . . [that] if he doesn't do something about it Mr. Cramer will do the same to him." Cramer then suggested that what M.L. did "about it" was to give "completely more inflammatory testimony" at trial to help ensure a conviction.

¶ 15 After hearing arguments from the parties, the court rejected as speculative Cramer's contention that he was prejudiced by the effect of Mineer's statements on M.L.'s trial testimony:

> [T]he only evidence I heard today with regard to [Mineer's] statements from both Ms. Cramer and Ms. Durham involves Ms. Mineer's discussion with [M.L.] about her boys, and Ms. Durham's belief that there was word-for-word parts of the trial, none of which she was able to identify. Those are the only things I can see that have any potential for impropriety. . . . [Mineer is] not barred from expressing her opinions, and I don't have any reason to believe that would have affected the outcome of the trial. With regard to anything [Mineer] said to [M.L.], what was heard was so incomplete that I can view it only as speculation, . . . or that her speaking would have any effect on [M.L.]. [Durham] heard so little about what she might have said and it's so incomplete that I cannot make the nexus necessary under *State v. McGrath*, [749 P.2d 631, 634 (Utah 1988),] which requires that the defendant bear the burden to demonstrate that he has been prejudiced to the extent that a mistrial is warranted. I simply cannot make that connection. It's simply not nearly close enough. . . .

The court further noted that defense counsel had an opportunity to cross-examine M.L. about the alleged discrepancies in his testimony, and did so "in great length" and "vigorously." Accordingly, the court rejected Cramer's motion for a new trial.

¶ 16 Cramer appeals both the trial court's pretrial ruling denying him access to M.L.'s privileged medical records and its posttrial denial of his motion for a new trial.

## ANALYSIS

## I. DISCLOSURE OF THE CHILD VICTIM'S PRIVILEGED MEDICAL RECORDS

¶ 17 Cramer contends that the trial court erred in conducting an in camera review of M.L.'s medical records rather than allowing him direct access to the records. Specifically, Cramer argues that (1) the Utah Constitution entitled him to direct access, and (2) alternatively, the court erred in rul-

ing, based on its in camera review, that none of the records was material.[2] The medical records were not included as part of the appellate record.

### A. Cramer's Claim That the Utah Constitution Affords an Accused The Right to Full Disclosure of Privileged Medical Records

¶ 18 Cramer contends that the trial court's in camera review of M.L.'s medical records denied him the ability to scrutinize the records with an "advocate's eye" for material information. Since the federal constitution does not provide Cramer this right, *see Pennsylvania v. Ritchie,* 480 U.S. 39, 60–61, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *State v. Cardall,* 1999 UT 51, ¶ 30, 982 P.2d 79 (applying *Ritchie*), he relies on the Utah Constitution in claiming entitlement to full disclosure of the medical records.

¶ 19 Article I, Section 7 of the Utah Constitution guarantees an accused the right to due process of law. Due process includes, among other things, the "opportunity to submit evidence, examine and cross-examine witnesses." *Christiansen v. Harris,* 109 Utah 1, 8, 163 P.2d 314, 317 (Utah 1945). In addition, Cramer notes that Article I, Section 12 of the Utah Constitution guarantees an accused the right to confrontation and compulsory process.

¶ 20 Because Utah appellate courts have not directly addressed the issue of whether the Utah Constitution requires full disclosure of records under the circumstances of his case, Cramer relies on authority from other states. Specifically, he cites as persuasive authority state constitutional holdings in cases from Massachusetts, Rhode Island, and Connecticut.

¶ 21 Cases decided by courts in these jurisdictions do not support his interpretation of the Utah Constitution, however. Although Cramer accurately notes that Massachusetts initially rejected in camera review in favor of direct access by the accused's attorney, *Commonwealth v. Stockhammer,* 409 Mass. 867, 570 N.E.2d 992, 1002 (1991), he overlooks the fact that in later cases Massachusetts reinstated in camera review procedures. *See, e.g., Commonwealth v. Bishop,* 416 Mass. 169, 617 N.E.2d 990, 996–99 (1993) (devising in camera procedures to avoid overly inclusive disclosures of privileged information to accused). Prompting this return to in camera review procedures was the Massachusetts Supreme Court's informed judgment that its earlier "direct access" procedures required disclosure of privileged records that "may contain nothing that would aid the defense[.]" *Id.* at 996. In short, Massachusetts's return to in camera review procedures in light of its experience with permitting defense counsel controlled access to privileged records militates against Cramer's argument in favor of full disclosure.

¶ 22 Cramer also cites *State v. Hufford,* 205 Conn. 386, 533 A.2d 866 (1987), as lending persuasive authority to his interpretation of the Utah Constitution. However, once again, current authority in the cited jurisdiction contradicts Cramer's position. Indeed, applying its substantial experience in balancing the constitutional rights of an accused with a victim's privacy interests in privileged mental health records, the Connecticut Supreme Court recently stated as follows:

> We reaffirm that the in camera approach represents the most effective and sensitive balance between the interests of the criminal defendant and private citizens who ex-

---

**2.** In his appellate brief, Cramer also argues in favor of disclosure on the ground that the records were not privileged under rule 506(d), which exempts from the privilege "communication[s] relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which that condition is an element of any claim or defense...." At oral argument, Cramer's counsel waived this argument when she did not dispute that the records were all privileged:

> COURT: As I understand it, ... the court [in conducting its in camera review] was required

to make a determination of whether the documents were privileged at all. Do you contend that the court erred in that respect?

> CRAMER'S COUNSEL: No. And I believe there is no dispute that all the documents the defense counsel is looking for would have that claim of privilege....

Moreover, even if Cramer had not waived this argument, his failure to ensure that the medical records were included in the appellate record prevents us from reviewing whether the requested records were subject to rule 506(d)'s exceptions to the privilege.

pect and rely on the confidentiality of their psychiatric records and communications.... As we stated in *State v. Pratt*, 235 Conn. 595, 611, 669 A.2d 562 (1995), "in camera judicial review of a victim's privileged records currently represents the most common method of balancing statutory privileges against the defendant's trial rights. *See, e.g., Jordan v. State*, 607 So.2d 333, 335 (Ala.Crim.App.1992); *Gunter v. State*, 313 Ark. 504, 512–13, 857 S.W.2d 156 (1993); *People v. District Court*, 743 P.2d 432, 436 (Colo.1987); *People v. Foggy*, 121 Ill.2d 337, 349–50, 521 N.E.2d 86, 118 Ill.Dec. 18 (1988); *Goldsmith v. State*, 337 Md. 112, 133–35, 651 A.2d 866 (1995); *Commonwealth v. Bishop*, 416 Mass. 169, 179–80, 617 N.E.2d 990 (1993); *People v. Stanaway*, 446 Mich. 643, 678–79, 521 N.W.2d 557 (1994); *State v. Cressey*, 137 N.H. 402, 413, 628 A.2d 696 (1993); *State v. Kalakosky*, 121 Wash.2d 525, 550, 852 P.2d 1064 (1993)."

*State v. Slimskey*, 257 Conn. 842, 779 A.2d 723, 732 n. 9 (2001).

¶ 23 Finally, although Cramer contends that the Rhode Island Supreme Court has construed that state's confrontation clause as affording an accused broader rights than required in *Ritchie*, the case on which Cramer relies indicates that an accused's rights under that state's confrontation clause are not violated by an in camera review of privileged records. *See State v. Kelly*, 554 A.2d 632, 636–38 (R.I.1989) (noting that, had the accused not been granted a new trial on other grounds, the case would have been remanded for the trial court to conduct an in camera review of a witness's juvenile records).

¶ 24 In short, the jurisdictions cited by Cramer do not lend persuasive authority to Cramer's interpretation of the Utah Constitution. Indeed, the case law in these jurisdictions contradicts Cramer's interpretation. Thus, Cramer has cited no persuasive authority for his view of due process under our constitution, nor has he made any persuasive arguments. Accordingly, we conclude that the trial court's order denying Cramer's request for "full disclosure" of M.L.'s privileged medical records did not violate Cramer's rights under the Utah Constitution. .

**B. Cramer's Claim That the Court Erred in Not Disclosing Any of the Records Pursuant to its In Camera Review**

¶ 25 Cramer next contends that, given the centrality of M.L.'s credibility to the case, the trial court erred in not disclosing any records. In essence, Cramer argues that some of the records must have been material and that the trial court, in conducting its in camera review, erred in concluding that none of the records was material within the meaning of *Ritchie*. In other words, Cramer contends that the trial court did not correctly apply the law (*Ritchie's* materiality standard) to the facts (the medical records). We are unable to review this ruling regarding materiality, however, because the medical records were not included in the appellate record.

¶ 26 Under rule 11(e)(2) of the Utah Rules of Appellate Procedure, an appellant has the duty to ensure the record is complete with respect to disputed findings or conclusions:

If the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion. Neither the court nor the appellee is obligated to correct appellant's deficiencies in providing the relevant portions of the transcript.

Utah R.App. P. 11(e)(2); *see also State v. Nine Thousand One Hundred Ninety–Nine Dollars*, 791 P.2d 213, 217 (Utah Ct.App. 1990) ("Since counsel failed to provide this court with all relevant evidence bearing on the issues raised on appeal, as required by Utah R.App. P. 11(e)(2), we can only presume that the judgment was supported by sufficient evidence." (internal citations omitted)); *Sampson v. Richins*, 770 P.2d 998, 1002–03 (Utah Ct.App.1989) ("In essence, Rule 11 directs counsel to provide this court with all evidence relevant to the issues raised on appeal.").

¶ 27 Although the trial court denied Cramer direct access to M.L.'s records, Cramer should have requested that the court seal and retain the records as part of the record as per rule 4–205(4)(A) of the Utah Code of

Judicial Administration, or if the court rejected that request, Cramer should have made a record of his objection and his efforts to include the sealed documents in the record. In addition, after transmission of the record to this Court, Cramer could have attempted to rectify the omission by moving to supplement the record:

> If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation ... either before or after the record is transmitted, may direct that the omission or misstatement be corrected and if necessary that a supplemental record be certified and transmitted.

Utah R.App. P. 11(h). However, Cramer did not move to supplement the record even after this Court pointed out the omission to his attorney during oral argument. Although we have the discretion to supplement an inadequate record, Utah R.App. P. 11(h), we decline to exercise this discretion given that Cramer had an adequate opportunity to ensure a complete record himself.

■ ¶ 28 Because M.L.'s medical records are not included in the appellate record, we presume that the trial court correctly determined that none of the records was material to Cramer's defense. *See State v. Robertson,* 932 P.2d 1219, 1226 (Utah 1997) (applying precedent under which "[i]f an appellant fails to provide an adequate record on appeal, this Court must assume the regularity of the proceedings below." (internal quotations omitted)).[3]

## II. DENIAL OF NEW TRIAL FOR SPECTATOR'S CONTACT WITH VICTIM

¶ 29 In claiming that Mineer's statements to M.L. entitled him to a new trial, Cramer argues that these statements (1) violated the court's exclusion order under rule 615 and (2)

were "new evidence" that made a different result probable on retrial. We address each argument in turn.

### A. Alleged Violation of Exclusion Order

■ ¶ 30 Cramer argues that Mineer's statements to M.L. violated the court's exclusion order under rule 615 and prejudiced him to the extent that the trial court should have granted his motion for a new trial. When an exclusion order has been violated, we review a trial court's denial of a motion for a new trial for abuse of discretion. *See State v. McGrath,* 749 P.2d 631, 634 (Utah 1988). In performing this review, we consider first Mineer's alleged statements to M.L. regarding the abuse of her sons, then her alleged statements to M.L. about other witnesses' testimony.

1. Alleged Statements about Cramer's Abuse of Mineer's Children in an Unrelated Case

■ ¶ 31 Turning first to Mineer's statements regarding the abuse of her sons, we note that Cramer does not claim that Mineer or any other witness presented testimony about the abuse of Mineer's sons. Because rule 615 is directed toward preventing witnesses from changing their testimony based on *other evidence adduced at trial* (e.g., other witnesses' testimony), Mineer's statements to M.L. about her sons' abuse did not violate rule 615. *See* Utah R. Evid. 615 (stating that, upon request, "court shall order witnesses excluded *so that they cannot hear the testimony of other witnesses*" (emphasis added)); *McGrath,* 749 P.2d at 634. We therefore affirm the trial court's conclusion that communication of this information to M.L. did not justify a new trial under rule 615.

---

**3.** Cramer further contends that because his requests were sufficiently "specific," he was entitled to direct access to M.L.'s medical records under *Ritchie.* Cramer misinterprets *Ritchie.* Although "a defendant ... aware of specific information contained in [a] file [containing privileged records] ... is free to *request* it directly from the court, and *argue* in favor of its materiality," *Ritchie,* 480 U.S. at 60, 107 S.Ct. 989 (em-

phasis added), this does not automatically entitle the defendant to *receive* the requested records: the court must still assess whether the records are indeed material. *See Ritchie,* 480 U.S. at 58 n. 15, 59–60, 107 S.Ct. 989; *State v. Cardall,* 1999 UT 51, ¶¶ 33–35, 982 P.2d 79 (noting that defendant "specifically requested that the trial court review" certain records).

### 2. Alleged Statements Concerning Other Witnesses' Testimony

¶ 32 Turning next to Mineer's alleged statements about other witnesses' testimony, we conclude that the trial court did not abuse its discretion in concluding that Cramer failed to meet his burden under *McGrath*. As the trial court correctly recognized, under *McGrath*, a defendant must show that a violation of the exclusion order "prejudiced [him] to the extent that a new trial should be granted." *McGrath*, 749 P.2d at 634 (declining to adopt defendant's argument "that prejudice is inherent in [a] violation of an order of exclusion").

¶ 33 The record supports the trial court's conclusion that Cramer did not show sufficient prejudice to justify a new trial. As the trial court noted, Jennifer Durham testified that she heard only small portions of Mineer's statements to M.L., and could not recall specifically what was said about the testimony in court. Even assuming that Mineer told M.L. about other witnesses' testimony, Cramer does not claim that any other witness testified, for example, that Cramer asked M.L. whether the touching "felt good." Thus, Cramer made no showing that M.L. changed his testimony as a result of Mineer's statements about other witnesses' testimony. Moreover, in contrast to his argument concerning Mineer's statements about Cramer's abuse of her sons, Cramer does not even argue that the communication of other witnesses' testimony engendered fear in M.L. and, as a result, caused him to change his testimony. Because Cramer did not provide the trial court with evidence that M.L. "changed his testimony because of the conversations" concerning other witnesses' testimony, *id.*, the trial court did not abuse its discretion in concluding that Cramer had not demonstrated that these communications "prejudiced [him] to the extent that a mistrial should be granted," *id.*, even assuming these communications violated the exclusion order. Accordingly, we affirm the trial court's conclusion that Mineer's alleged com-

munications to M.L. about other witnesses' testimony did not warrant a new trial under rule 615.[4]

#### B. New Evidence

¶ 34 Alternatively, Cramer contends that evidence of Mineer's contact with M.L. is "new evidence" entitling him to a new trial under *State v. James*, 819 P.2d 781, 793 (Utah 1991) (setting forth test for new trial based on newly discovered evidence). In this regard, Cramer argues that he could have used Mineer's conversations with M.L. to impeach or explain M.L.'s testimony at trial, which Cramer characterizes as being substantially more inculpatory and inflammatory than his previous statements.

¶ 35 Cramer did not, however, preserve this issue for appellate review. In his arguments to the lower court in support of his motion for a new trial, he did not cite *James* or argue that Mineer's statements satisfied the *James* test. In addition, Cramer does not contend that plain error or exceptional circumstances justify addressing this issue for the first time on appeal. *See State v. Mead*, 2001 UT 58, ¶ 35 n. 5, 27 P.3d 1115. Thus, we decline to address this issue. *See id.* (declining to address criminal defendant's argument that was raised for the first time on appeal).

¶ 36 Accordingly, we conclude the trial court did not exceed its discretion in denying Cramer a new trial as a result of Mineer's statements to M.L.

### CONCLUSION

¶ 37 The trial court's reliance on an in camera review in determining what records were material to Cramer's defense did not violate Cramer's rights under the Utah Constitution. Furthermore, by failing to ensure the medical records were included in the appellate record, Cramer waived his right to appellate review of the trial court's application of the *Ritchie* materiality standard. Fi-

---

4. Cramer also makes a cursory argument under the state due process clause in which he simply paraphrases his arguments under rule 615. This argument is not only inadequately briefed, but fails for the reasons set forth in support of our affirmance of the trial court's rulings under rule 615. We therefore do not address this claim. *See, e.g., Assoc. Gen. Contractors v. Bd. of Oil, Gas & Mining*, 2001 UT 112, ¶ 37 & n. 8, 38 P.3d 291; *supra* ¶¶ 29–33.

nally, the trial court did not exceed its discretion in denying Cramer's motion for a new trial based on a spectator's statements to M.L. Accordingly, we affirm the trial court's rulings and Cramer's convictions.

¶ 38 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.