**2022 UT 32**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

F.L.,
*Petitioner*,

*v.*

COURT OF APPEALS, DAVID M. CHADWICK, and STATE OF UTAH,
*Respondents.*

No. 20210411
Heard April 11, 2022
Filed July 7, 2022

On Petition for Extraordinary Writ

Fourth District, Provo
The Honorable James R. Taylor
No. 171400984

Attorneys:

Paul Cassell, Heidi Nestel, Crystal C. Powell, Salt Lake City,
for petitioner

Sean D. Reyes, Att'y Gen., William M. Hains, Asst. Solic. Gen.,
Salt Lake City, for respondent State of Utah

Douglas J. Thompson, Provo, for respondent David Chadwick

CHIEF JUSTICE DURRANT authored the opinion of the Court in which
JUSTICE PEARCE, JUSTICE PETERSEN, JUDGE OLIVER,
and JUDGE GIBSON joined.

Due to his retirement, JUSTICE HIMONAS did not participate
herein; DISTRICT COURT JUDGE AMY OLIVER sat.

Having recused himself, ASSOCIATE CHIEF JUSTICE LEE did not
participate herein; DISTRICT COURT JUDGE DIANNA GIBSON sat.

JUSTICE HAGEN became a member of the Court on May 18, 2022,
after oral argument in this matter, and accordingly did not
participate.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1  F.L. is the alleged victim of sex crimes charged against David M. Chadwick. In the district court proceedings below, Mr. Chadwick requested that the district court conduct an in camera review of F.L.'s therapy and counseling records and release specific categories of information relevant to his defense. The court granted Mr. Chadwick's request and conducted the review, after which it issued several orders quoting relevant excerpts from the records. The court then sealed the records. Mr. Chadwick proceeded to trial and was convicted of one count of sexual abuse of a child.

¶2 Mr. Chadwick appealed to the court of appeals and challenged the adequacy of the district court's in camera review. On its own motion, the court of appeals unsealed F.L.'s records and classified them as private, which allowed Mr. Chadwick's attorney to make extensive use of those records in his opening brief on appeal. In response, F.L. asked the court of appeals to reseal her records and strike all references to the confidential material in Mr. Chadwick's brief. That court granted F.L.'s request and instructed Mr. Chadwick to file a revised brief without references to the records.

¶3 Mr. Chadwick filed the revised brief as instructed, but he challenged the court of appeals' decision to reseal F.L.'s therapy records, arguing the sealing order violated his rights. He asked that the court release those records to his attorney or, in the alternative, conduct a new in camera review of the records with an "advocate's eye." F.L. then moved to intervene in Mr. Chadwick's appeal as a limited-purpose party to assert her privacy interests.

¶4 The court of appeals construed F.L.'s motion to intervene as a motion to file an amicus brief under Utah Rule of Appellate Procedure 25, and it allowed her thirty days to file an amicus brief. F.L. then filed a petition for certiorari review with this court, which we denied because the court of appeals had not yet issued a final decision on Mr. Chadwick's appeal. We instead invited F.L. to file a petition for extraordinary relief. She did so, but she also filed a motion asking us to reconsider the denial of her certiorari petition. We deferred ruling on this motion for reconsideration and instructed the parties to brief the issue in conjunction with the briefing on F.L.'s petition for extraordinary relief.

¶5 We deny F.L.'s motion for reconsideration but grant her petition for extraordinary relief. Under the rules governing appellate

procedure, we do not have jurisdiction to accept F.L.'s petition for certiorari because the court of appeals has not yet issued a final decision on Mr. Chadwick's appeal. We also reject F.L.'s argument that we should apply conventional standards of review to her petition for extraordinary relief. But we grant her request for extraordinary relief. The court of appeals made a mistake of law and so abused its discretion in not allowing F.L. to intervene as a limited-purpose party. Further, she has no other plain, speedy, and adequate avenue for relief. And because of the significance of the legal issue and the potential severe consequences of not allowing F.L. to be heard as a limited-purpose party, we exercise our discretion to grant relief. We accordingly reverse the court of appeals' decision on F.L.'s motion to intervene and remand to allow her to participate as a limited-purpose party to assert her rights in her confidential therapy records.

## Background

¶6 In September 2016, the State charged Mr. Chadwick with four counts of sexual abuse of a child, a second-degree felony. F.L. is the alleged victim of these crimes. During the underlying criminal proceedings, Mr. Chadwick filed a motion asking the district court to conduct an in camera review of F.L.'s therapy and counseling records. Before the court ruled on the motion, the State stipulated that Mr. Chadwick was entitled to the in camera review under Utah law, and the parties submitted a stipulated order to that effect. The district court signed the order, which directed that the therapy records be released directly to the district court for in camera review. The order also stated that after the court reviewed the records, it would "disclose only those portions that contain a factual description of alleged abuse by Mr. Chadwick and circumstances surrounding those events, any report of those events by the counselor to law enforcement, and any methods used to refresh or enhance the memory of the alleged victim regarding those events." The order further provided that any information not provided to Mr. Chadwick would be sealed.

¶7 The district court conducted the in camera review in accordance with the stipulated order. It then issued several orders quoting excerpts from the records, but it did not release the records themselves. The case eventually went to trial, and the jury convicted Mr. Chadwick on one of the four counts of sexual abuse of a child. F.L. was not represented by legal counsel during Mr. Chadwick's criminal proceedings.

¶8 Mr. Chadwick appealed his conviction to the court of appeals and secured an order to transmit the sealed therapy records to that court. Then, on its own motion, the court of appeals unsealed and designated the records as private, which gave Mr. Chadwick's counsel access to them. Mr. Chadwick then filed an opening brief and argued that the district court's in camera review was inadequate. In making his arguments, Mr. Chadwick quoted extensively from the previously sealed documents.

¶9 The State responded to Mr. Chadwick's brief by filing a motion to reseal F.L.'s therapy records and strike the portions of Mr. Chadwick's brief citing those records. The court of appeals denied the State's motion.

¶10 F.L. then retained legal counsel and filed a motion similar to the State's, asking the court of appeals to reseal her therapy records and strike all portions of Mr. Chadwick's brief referencing those records. She also asked the court to publish an opinion on her motion. The court granted F.L.'s motion in part, resealing the records and ordering Mr. Chadwick to file a revised brief omitting all references to F.L.'s confidential records. But it denied F.L.'s request for a published opinion on the motion.

¶11 As ordered, Mr. Chadwick submitted a revised brief that redacted all references to F.L.'s therapy records, but he made two arguments regarding access to those records. First, he asked the court of appeals to reconsider its sealing order and designate the records as private, arguing the order violated his right to appeal, his right to due process, and his right to fundamental fairness. Second, and in the alternative, he asked the court to conduct its own in camera review of the records with an "advocate's eye."

¶12 F.L. responded by filing a motion to intervene as a limited-purpose party to protect the confidentiality of her therapy records, specifically stating that allowing her to file an amicus brief would not allow her to sufficiently protect her interests. The State supported F.L.'s motion. Mr. Chadwick opposed the motion by arguing F.L. did not have a right to intervene but could instead file an amicus brief.

¶13 The court of appeals, rather than denying F.L.'s motion to intervene, construed the motion as a request for leave to file an amicus curiae brief pursuant to rule 25 of the Utah Rules of Appellate Procedure. It then granted the construed motion and allowed F.L. thirty days to file an amicus brief.

¶14 F.L. then filed a petition for certiorari with this court, asking us to overrule the court of appeals' decision on her motion to intervene. She also asked that we construe her request as a petition for extraordinary relief in the event we found that we did not have jurisdiction to accept her petition for certiorari. Relying on *State v. Epling*,[1] we declined to accept F.L.'s petition after determining that "[c]ertiorari review may be sought only from a final decision of the Court of Appeals." We also declined to construe the petition as a request for extraordinary relief because F.L. failed to frame the petition in terms of the criteria specified in rule 19 of the Utah Rules of Appellate Procedure, but we granted F.L. leave file a separate petition for extraordinary relief.

¶15 F.L. accepted our invitation to file a separate petition for extraordinary relief and, in conjunction with that filing, also submitted a motion asking us to reconsider our refusal to accept her petition for certiorari. We deferred ruling on the motion for reconsideration and instead invited the parties to brief the issue. We have jurisdiction to hear this case under Utah Code section 78A-3-102(2).

**Standard of Review**

¶16 F.L. argues that although she has brought a petition for extraordinary relief, she is entitled to have us hear her petition for certiorari or, in the alternative, to have us review her extraordinary writ under the standard of review applicable to a conventional appeal. For reasons explained further below, we do not accept F.L's certiorari petition, and we decline to deviate from the standard of review applicable to petitions for extraordinary relief.

¶17 Rule 65B(d) of the Utah Rules of Civil Procedure provides the standard of review for extraordinary relief when the petitioner alleges a wrongful use of judicial authority. It states that "[w]here no other plain, speedy and adequate remedy is available," "relief may be granted . . . where an inferior court . . . has exceeded its jurisdiction or abused its discretion."[2] The rule further provides that when "the challenged proceedings are judicial in nature, the court's review shall not extend further than to determine whether the respondent has regularly pursued its authority."[3] "A court

---

[1] 2010 UT 53, ¶ 3, 240 P.3d 788.

[2] UTAH R. CIV. P. 65B(a), (d)(2)(A).

[3] *Id.* 65B(d)(4).

wrongfully uses its judicial authority when it abuses its discretion,"[4] and "a mistake of law may constitute an abuse of discretion."[5] "However, even where a mistake of law or abuse of discretion is found, this court nonetheless retains discretion whether to grant the relief requested."[6]

## Analysis

¶18 F.L. makes two overarching arguments in her petition for extraordinary relief, one procedural and one substantive. On the procedural issue, she argues we should have accepted her petition for certiorari or, in the alternative, that we should apply the standard of review for a conventional appeal to her petition for extraordinary relief. And on the substantive issue, she argues the court of appeals erred in construing her motion to intervene as a motion for leave to file an amicus brief and that the error is significant enough to justify extraordinary relief.

¶19 We disagree with F.L.'s procedural arguments but agree that she is entitled to extraordinary relief. F.L. has not convinced us that she is entitled to be heard through a petition for certiorari rather than a petition for extraordinary relief, nor has she convinced us that we should apply the conventional standard of review to her request for an extraordinary writ. But we conclude that the court of appeals made a mistake of law and abused its discretion in not allowing F.L. to intervene as a limited-purpose party to protect the confidentiality of her mental health records. We accordingly exercise our discretion to grant relief and instruct the court of appeals to allow F.L. to intervene in Mr. Chadwick's appeal as a limited-purpose party.

I. The Standard of Review for Extraordinary Relief Applies

¶20 After we denied F.L.'s petition for certiorari, she filed a motion asking that we reconsider our decision. We deferred ruling on the motion and instructed the parties to brief the issue. With full briefing now before us, we hold that we do not have jurisdiction to hear F.L.'s petition for certiorari and that the usual standard of review for extraordinary relief applies. Our caselaw and rules of appellate procedure make clear that a person may only petition for

---

[4] *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 21, 299 P.3d 1058.

[5] *State v. Barrett*, 2005 UT 88, ¶ 26, 127 P.3d 682.

[6] *Cox v. Laycock*, 2015 UT 20, ¶ 17, 345 P.3d 689.

certiorari after the court of appeals issues a final decision, and no such final decision has been issued in Mr. Chadwick's appeal. And though F.L. cites other authority in support of her argument that we should accept her petition for certiorari, none of that authority mandates that she be heard through a petition for certiorari rather than a petition for extraordinary relief. F.L. has also failed to convince us to apply a conventional standard of review to her petition for extraordinary relief, as the cases she relies upon deal not with the standard of review for an extraordinary petition, but with the kind of standing that is required before a person can obtain extraordinary relief in the first place.

### A. Review Through a Petition for Certiorari Is Not Available

¶21 In initially denying F.L.'s petition for certiorari, we stated we could not accept the petition because it challenged "an intermediate decision of the Court of Appeals" and held that "[c]ertiorari review may be sought only from a final decision of the Court of Appeals." This decision is correct under the Utah Rules of Appellate Procedure and our caselaw, and F.L. has failed to convince us otherwise.

¶22 Utah Rule of Appellate Procedure 45(a) states that "the review of a judgment, an order, and a decree (herein referred to as 'decisions') of the Court of Appeals shall be initiated by filing in the Utah Supreme Court a petition for a writ of certiorari to the Utah Court of Appeals." By its terms, this rule does not make any distinction between intermediate and final decisions. But rule 48 of the Utah Rules of Appellate procedure, which separately governs the timing of a petition for certiorari, provides that a petition "must be filed with the Supreme Court clerk within 30 days after the Court of Appeals' *final decision* is issued."[7] And in *State v. Epling*, we determined that the phrase "final decision" foreclosed the possibility of certiorari review of an intermediate decision of the court of appeals because any other interpretation "would have the effect of rendering the word 'final' superfluous."[8] Though we determined that a petition for certiorari was not available to challenge an intermediate order of the court of appeals, we held that "we may

---

[7] UTAH R. APP. P. 48(a) (emphasis added).

[8] 2010 UT 53, ¶ 3, 240 P.3d 788.

retain the option to address such an intermediate order by petition for extraordinary writ."[9]

¶23 In this case, because the court of appeals has not issued a final decision on Mr. Chadwick's appeal, its intermediate order on F.L.'s motion to intervene is not available for immediate certiorari review. F.L. challenges this conclusion by arguing that the court of appeals has, "for all practical purposes," issued a final decision on whether she will be a party below. But issuing a decision on the discrete issue of intervention is not the same as issuing a final decision on appeal.[10] The word "final" is defined as "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated; concluded."[11] And the phrase "final decision" is defined as "[a] court's last action that settles the rights of

---

[9] *Id.* ¶ 4.

[10] F.L. also points to our decision in *State v. Lopez* to support her argument that we should accept her certiorari petition. In *Lopez*, we stated that "[o]ur cases have recognized a direct appeal of right from the entry of at least one form of non-final order—an order denying a motion to intervene." *State v. Lopez*, 2020 UT 61, ¶ 26 n.12, 474 P.3d 949 (citing *Brigham Young Univ. v. Tremco Consultants, Inc.*, 2007 UT 17, ¶ 17, 156 P.3d 782; *Com. Block Realty Co. v. U.S. Fid. & Guar. Co.*, 28 P.2d 1081, 1082 (Utah 1934)). F.L. then argues that, because *Lopez* (and the cases on which it relied) recognize a right to an immediate appeal from an order denying intervention, it was "most unusual" for us to not accept her petition for certiorari review.

F.L.'s reliance on these cases is unavailing. This is so because they do not discuss the issue in this case: whether there is a right to an immediate appeal from the court of appeals' denial of a motion to intervene. Instead, our caselaw—as it currently stands—only recognizes a right to a direct appeal from a *district court's* denial of a motion to intervene. Our caselaw and procedural rules do not explicitly contemplate avenues for appellate review of the court of appeals' denial of a motion to intervene, and in circumstances where no other avenues for review are available, a petition for extraordinary writ is the proper procedural mechanism for obtaining relief. *See* UTAH R. CIV. P. 65B(a) (stating that extraordinary relief is only available when "no other plain, speedy and adequate remedy" exists).

[11] *Final*, BLACK'S LAW DICTIONARY (11th ed. 2019).

the parties and disposes of all issues in controversy."[12] The court of appeals clearly must take further judicial action on Mr. Chadwick's appeal before the matter is concluded, and its decision on F.L.'s motion to intervene cannot be described as a last action settling the rights of the parties. So we decline to construe the court of appeals' intermediate decision on F.L.'s motion to intervene as a "final order" that may qualify for certiorari review.

¶24 F.L. also argues that her constitutional right to be treated with "fairness, respect, and dignity" under the Utah Constitution gives us jurisdiction, independent from the Utah Rules of Appellate Procedure, to accept her petition for certiorari.[13] But she devotes scant briefing to this argument, stating only that her right to fairness entitles her to obtain immediate appellate review through a certiorari petition. This argument, without more, fails to persuade us that requiring F.L. to file a petition for extraordinary relief, rather than a petition for certiorari, would be unfair.

¶25 F.L.'s final argument in support of her position that we should accept her certiorari petition is that Utah Code sections 78A-3-102(3) and 77-38-11(2)(b) provide a basis, independent of the Utah Rules of Appellate Procedure, for us to hear her arguments on certiorari review. But those statues do not mandate that we accept F.L.'s petition for certiorari. Utah Code section 78A-3-102(3) provides a general list of matters over which we have appellate jurisdiction but does not mention the procedural mechanism through which we can exercise that jurisdiction. Those procedural mechanisms are found in the Utah Rules of Appellate Procedure. And Utah Code section 77-38-11(2)(b) states that rulings on a crime victim's motion "may be appealed under the rules governing appellate actions," i.e., the Utah Rules of Appellate Procedure. So the statutes F.L. cites are tied to our appellate rules, and as explained above, those rules mandate that we hear F.L.'s claims through a petition for extraordinary relief rather than a petition for certiorari review.

¶26 In sum, because we are reviewing an intermediate decision of the court of appeals, we do not have jurisdiction to accept F.L.'s

---

[12] *Final Decision*, BLACK'S LAW DICTIONARY (11th ed. 2019) (referring to *Final Judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

[13] *See* UTAH CONST. art. I, § 28(1)(a).

certiorari petition. And none of F.L.'s arguments change this conclusion.

*B. Conventional Standards of Review Do Not Apply to Extraordinary Writs*

¶27 F.L. argues that if we decline to accept her petition for certiorari, we should nevertheless treat her petition for extraordinary relief as a "substitute for a conventional appeal" and apply a less deferential standard of review. In making this argument, F.L. relies on our decision in *Society of Professional Journalists, Utah Chapter v. Bullock*,[14] which she claims established that when a petitioner seeking extraordinary relief meets the test for appellate standing, the standard of review for a conventional appeal applies. F.L.'s argument misconstrues our caselaw, and we accordingly reject it.

¶28 In *Society of Professional Journalists*, a journalist society petitioned for extraordinary relief after a district court denied public access to a criminal defendant's pretrial competency proceedings.[15] The society had appeared and made arguments to the district court before requesting extraordinary relief.[16] Before we addressed the merits of the petition, we noted the case contained a "wrinkle" in that the petition was "not an original proceeding because it [was] not a controversy that [was] brought before the courts for the first time."[17] We stated there was "nothing illegitimate about one using a writ to obtain review of a lower court ruling," but we also noted that using an extraordinary writ to obtain review "raises a concern that no party be advantaged insofar as standing is concerned by reason of having petitioned this Court for a writ rather than having proceeded by way of an appeal."[18] To resolve this concern and ensure the "normal preconditions" for obtaining appellate review were satisfied, we held that a party bringing an extraordinary writ had to "demonstrate appellate standing" to be entitled to petition for extraordinary relief."[19]

---

[14] 743 P.2d 1166 (Utah 1987).

[15] *Id.* at 1168.

[16] *Id.* at 1169–70.

[17] *Id.* at 1170–71.

[18] *Id.* at 1171.

[19] *Id.* at 1171–72.

¶29 As this case summary makes clear, *Society of Professional Journalists* does not, as F.L. argues, deal with the standard of review applicable to petitions for extraordinary relief. Instead, it deals with the kind of standing that is required before a party can obtain extraordinary relief in the first place. As we noted in a later case, *Society of Professional Journalists* addressed two concerns. First, it addressed the concern that "the extraordinary writ process [could] be abused as a tool for circumventing a traditional appeal."[20] And second, it addressed the concern that "a party who did not have standing to appear in the district court could potentially use an extraordinary writ to gain appellate-like review of the district court's rulings."[21] These two concerns have nothing to do with the standard of review. We accordingly reject F.L.'s argument and apply the deferential standard of review applicable to petitions for extraordinary relief.[22]

## II. The Court of Appeals Abused Its Discretion

¶30 Though we reject F.L.'s procedural arguments, we nevertheless agree with her contention that the court of appeals wrongly denied her request to intervene as a limited-purpose party. Our caselaw and rules of evidence make clear that F.L. has the right to proactively assert her privacy interests in her privileged mental health records. Amicus status does not allow F.L. to adequately claim her privilege, and the court of appeals made a mistake of law in concluding otherwise. Because of the importance of the interests at stake, and in order to provide clarity in this area of the law, we exercise our discretion to grant F.L.'s request for extraordinary relief.

¶31 As we noted above, a person petitioning for extraordinary relief is required to make several showings. The petitioner must

---

[20] *Krejci v. City of Saratoga Springs*, 2013 UT 74, ¶ 13, 322 P.3d 662.

[21] *Id.*

[22] Though we determine that the typical standard of review for extraordinary relief applies in this case, we are concerned that the deference inherent in that standard may not sufficiently protect the rights of those seeking to intervene as limited-purpose parties in an appeal where access to their privileged information is at stake. We accordingly refer the issue to our appellate rules committee and instruct it to consider whether our rules should be amended to give privilege holders other avenues of appellate review for denials of a motion to intervene in an appeal.

demonstrate there is "no other plain, speedy and adequate remedy" available and that relief is authorized by Utah Rule of Civil Procedure 65B.[23] But even if a petitioner makes these showings, "this court nonetheless retains discretion whether to grant the relief requested."[24]

¶32 We hold that F.L. is entitled to extraordinary relief. A petition for extraordinary relief is the only way for her to obtain a speedy and adequate remedy, and extraordinary relief is authorized because the court of appeals made a mistake of law in not allowing her to intervene for the limited purpose of asserting her privilege in her confidential therapy records. And because the error went to a significant legal issue and has potentially severe consequences for F.L., we exercise our discretion to grant relief.

*A. Extraordinary Relief Is the Only Plain, Speedy, and Adequate Remedy*

¶33 Due to the nature of the issues and the procedural posture of this case, F.L. has no other plain, speedy, and adequate remedy apart from extraordinary relief. We have already concluded that she is not entitled to certiorari review of the court of appeals' order denying her motion to intervene. And certiorari review after a final decision on Mr. Chadwick's appeal would not provide F.L. with an adequate remedy. This is so because after the court of appeals issues a final decision on Mr. Chadwick's appeal, F.L. would have already lost the opportunity to participate as a limited-purpose party. In addition, if F.L. were required to wait until after a final decision to appeal the denial of her motion to intervene, her confidential records may have already been released to Mr. Chadwick without her being able to assert her privacy interests. As we have previously noted in the extraordinary writ context, compelling a party "to turn over what is alleged to constitute privileged information has the potential to result in irreparable injury,"[25] and "appellate courts cannot always unring the bell once the information has been released."[26]

---

[23] UTAH R. CIV. P. 65B(a).

[24] *Cox v. Laycock*, 2015 UT 20, ¶ 17, 345 P.3d 689.

[25] *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 25, 299 P.3d 1058.

[26] *United States v. Sciarra*, 851 F.2d 621, 636 (3d Cir. 1988) (internal quotation marks omitted) (citing *Maness v. Meyers*, 419 U.S. 449, 460–61 (1975)).

¶34 Mr. Chadwick suggests F.L. could have pursued an interlocutory appeal from the order denying limited-purpose intervention. But rule 5 of the Utah Rules of Appellate Procedure, which governs appeals of interlocutory orders, only contemplates interlocutory appeals of trial court orders, not appellate court orders.[27] An interlocutory appeal is therefore unavailable to F.L., and as we noted above, review after a final decision could potentially provide her with no adequate relief. We accordingly determine that a petition for extraordinary relief is the only avenue for F.L. to obtain a plain, speedy, and adequate remedy.

*B. The Court of Appeals Made a Mistake of Law and Abused Its Discretion*

¶35 We also conclude that relief is authorized by rule 65B in these circumstances. Specifically, relief is authorized under rule 65B(d)(2), which states that relief may be granted "where an inferior court . . . abused its discretion." And in the extraordinary relief context, "a mistake of law may constitute an abuse of discretion."[28] We hold that the court of appeals made a mistake of law in not allowing F.L. to intervene as a limited-purpose party because, under the reasoning of *State v. Brown*[29] and as provided in Utah Rule of Evidence 506, she is entitled to limited-party status to claim her privilege in her therapy records.

¶36 In *State v. Brown*, a crime victim sought to intervene in a defendant's criminal proceedings to assert a claim of restitution.[30] The district court rejected the victim's claim, and the victim appealed to this court.[31] We noted that although "a victim is not entitled to participate at all stages of the [criminal] proceedings or for all purposes," "that does not eliminate the possibility that a victim may

---

[27] *See* UTAH R. APP. P. 5 ("The petition must be filed within 21 days after the *trial court's* order is entered . . . ."); ("The petitioner must serve the petition on the opposing party and notice of the filing of the petition on the *trial court*."); ("The petition must contain . . . a demonstration that the issue was preserved in the *trial court*.) ("The petitioner must attach a copy of the *trial court's order* from which an appeal is sought . . . .") (emphases added).

[28] *State v. Barrett*, 2005 UT 88, ¶ 26, 127 P.3d 682.

[29] 2014 UT 48, 342 P.3d 239.

[30] *Id.* ¶ 1.

[31] *Id.* ¶¶ 1–2.

qualify as a limited-purpose party—with standing to assert a claim for restitution."[32] We looked to the statutes governing restitution, which stated that crime victims have a right to "seek restitution or reparations."[33] Determining that the statutory term "'seek'" "connotes a proactive right to 'go in search of,' or to 'try to acquire or gain,'" we held that "the anticipated mode of *seeking* restitution is . . . by a direct filing by the victim."[34] Based on our conclusion that the relevant statutes provided victims a right to proactively seek restitution, we determined victims "possess the status of a limited-purpose party with the right to file a request for restitution" in criminal proceedings.[35]

¶37 The reasoning of *State v. Brown* can be distilled into this general rule: if the law gives crime victims the ability to proactively assert a right or seek a remedy, then they may enforce those specific rights as limited-purpose parties in criminal proceedings. So as applied to this case, the question is whether the law gives F.L. the right to proactively assert her privacy interests in her privileged mental health records. We conclude that Utah Rule of Evidence 506 gives her such a right.[36]

---

[32] *Id.* ¶ 16.

[33] *Id.* ¶ 18 (citing UTAH CODE § 77-37-3(1)(e)).

[34] *Id.*

[35] *Id.* ¶ 20.

[36] F.L. and Mr. Chadwick spend much of their briefing arguing over whether F.L. should be allowed to intervene through Utah Rule of Civil Procedure 24, which F.L. argues should apply to these criminal proceedings under Utah Rule of Civil Procedure 81(e). The State argues F.L. does not need to satisfy the requirements of rule 24 to become a limited-purpose party under *Brown*, an assertion F.L. ultimately agrees with in her reply brief. Because we are concerned with the broad consequences of applying rule 24 to allow intervention in criminal proceedings, we adopt the narrower option proposed by the State. Rule 24 allows a person to become "a full-fledged party to the proceeding in every respect," *In re Adoption of C.C.*, 2021 UT 20, ¶ 27, 491 P.3d 859, with the right to "protect [her] interests as a fully participating party." *Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 53, 297 P.3d 599. But we have held that "[t]he traditional parties to a criminal

(continued . . .)

¶38 Utah Rule of Evidence 506(b) states that a "patient has a privilege . . . to refuse to disclose and to prevent any other person from disclosing information that is communicated in confidence to a . . . mental health therapist for the purpose of diagnosing or treating the patient." And subsection (c) of the rule, which is titled "Who May Claim the Privilege," provides that "[t]he privilege may be *claimed* by the patient."[37] Similar to the phrase "seek restitution" in *Brown*, the phrase "claim the privilege" connotes a proactive right. For instance, one dictionary defines the verb "claim" as "to take as the rightful owner" or "to assert to be rightfully one's own."[38] And the legal definition of "claim" includes "[t]he assertion of an existing right."[39] These facets of "claim" are proactive and indicative of a legal ability to formally assert a claim of privilege in legal proceedings where that privilege is in jeopardy.

¶39 Because F.L. has a legal right under rule 506 to claim a privilege in her therapy records, then under the reasoning of *Brown*, she also "possess[es] the status of a limited-purpose party with the right to" assert that privilege and directly oppose Mr. Chadwick's attempts to gain access to her records on appeal.[40] In concluding otherwise, the court of appeals made a mistake of law.

¶40 The fact that the court of appeals allowed F.L. to file an amicus brief does not change the outcome. "[I]t is a well-settled rule that an amicus brief cannot extend or enlarge the issues on appeal, and that we will only consider[ ] those portions of the amicus brief that bear on the issues pursued by the parties to th[e] appeal."[41] In

---

proceeding are the prosecution and the defense, and . . . a victim is not entitled to participate at all stages of the proceedings or for all purposes." *Brown*, 2014 UT 48, ¶ 16. We therefore choose the narrower option and resolve this case based on *Brown* and Utah Rule of Evidence 506 rather than rule 24.

[37] UTAH R. EVID. 506(c) (emphasis added).

[38] *Claim*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/claim (last visited Apr. 2, 2022).

[39] *Claim*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[40] *See Brown*, 2014 UT 48, ¶ 20.

[41] *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 25 n.55, 301 P.3d 984 (alterations in original) (citation omitted) (internal quotation marks omitted).

addition, "[r]elief beyond that which is sought by the parties cannot be requested by amicus curiae," and "[c]onsistent with this rule, motion practice by amici curiae is not permitted."[42] Amicus participation is insufficient to allow F.L. to "claim" her privilege under rule 506. With amicus status, F.L. can opine only on the issues Mr. Chadwick and the State choose to raise on appeal—or, in F.L.'s words, amicus status allows her "merely to kibitz from the sidelines about what is happening to her records." She also would be unable to raise potentially significant issues on how her rights under the Utah Constitution should inform appellate access to her records— which she intends to do if we grant extraordinary relief. We accordingly hold that the court of appeals made a mistake of law in relegating F.L. to amicus status.

### C. The Circumstances Justify Extraordinary Relief

¶41  As we noted above, demonstrating a ground for relief under Utah Rule of Civil Procedure 65B only gets a petitioner "a foot in the door" in qualifying for extraordinary relief.[43] Even when rule 65B authorizes relief, we still retain ultimate discretion over whether relief should be granted. In exercising our discretion, "we may consider a variety of factors such as the egregiousness of the alleged error, the significance of the legal issue presented by the petition, the severity of the consequences occasioned by the alleged error, and additional factors."[44]

¶42 We choose to exercise our discretion and grant relief for several reasons. The legal issue presented in this case—whether a crime victim has limited-party status in a criminal appeal to prevent disclosure of privileged information—is significant. We also find it likely that the same issue could present itself in a future case where, as here, a defendant seeks to challenge a district court's in camera review of a victim's confidential therapy records. In addition, our caselaw recognizes that crime victims have weighty interests in the privacy of their therapy records.[45] And the consequences of leaving

---

[42] 3B C.J.S. *Amicus Curiae* § 14 (2022).

[43] *Kamoe v. Ridge*, 2021 UT 5, ¶ 10, 483 P.3d 720.

[44] *Lindberg*, 2013 UT 15, ¶ 22 (citation omitted) (internal quotation marks omitted).

[45] *See State v. Cramer*, 2002 UT 9, ¶ 22, 44 P.3d 690 (acknowledging "a victim's privacy interests in privileged mental health records");

(continued . . .)

the error uncorrected are also potentially severe. If we chose not to grant relief and leave the court of appeals' decision intact, it could lead to F.L. being denied meaningful participation on the issue of whether her confidential records should be reviewed by her alleged abuser and/or the court of appeals. These potential consequences would not be adequately corrected on review after a final decision. We accordingly grant F.L.'s request for extraordinary relief.

**Conclusion**

¶43 We hold that we do not have jurisdiction to hear F.L.'s petition for certiorari because the court of appeals' order on her motion to intervene is an intermediate, non-final decision. We also decline to apply conventional standards of review to F.L.'s petition for extraordinary relief. But we hold that the court of appeals made a mistake of law in only allowing F.L. to file an amicus brief on the issue of appellate access to her confidential therapy records, as amicus status is insufficient to allow her to assert her rights. Because of the importance of the legal issue and the potentially severe consequences to F.L. of not being properly heard regarding access to her confidential records, we exercise our discretion to grant extraordinary relief. So we reverse the court of appeals' decision on F.L.'s motion to intervene and remand for her to participate in Mr. Chadwick's appeal as a limited-purpose party.

───────────

*State v. Blake*, 2002 UT 113, ¶ 19, 63 P.3d 56 (noting that the difficult test for obtaining in camera review of a crime victim's mental health records "is deliberate and prudent in light of the sensitivity of these types of records").