*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2025 UT 51**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

DEREK ANDERSON,
*Petitioner,*

*v.*

HONORABLE MATTHEW BATES *et al.,*[*]
*Respondents.*

No. 20251257
Heard October 28, 2025
Filed November 6, 2025

On Petition for Extraordinary Relief

Third District Court, Silver Summit
The Honorable Matthew D. Bates
No. 250500258

---

[*] Additional respondents and real parties in interest: Jennifer McCaffrey, Kurt Larsh, Kris Klein, Patsy Klein, Tyler Gough, Chanelle McGregor, Lindy Sternlight, Dan Sternlight, Scott Earl, and DeEtte Earl.

Lieutenant Governor Deidre M. Henderson is named as a respondent in this case, but she did not take a position on the petition and responded only that "she performed the duties required of her under the Municipal Incorporation Code."

Judge Matthew Bates filed a notice that he would not respond to the petition because "the real-parties-in-interest are in the best position to make the necessary arguments."

Additional attorneys: Derek E. Brown, Att'y Gen., Lance Sorenson, Keith W. Barlow, Asst. Att'ys Gen., Sarah Goldberg, Asst. Solic. Gen., for respondent Lieutenant Governor Deidre Henderson. Joseph A. Willard, for respondent Judge Matthew Bates.

Attorneys*

Troy L. Booher, Caroline A. Olsen, Salt Lake City, for petitioner

Janet M. Conway, Wanship, C. Michael Judd, Salt Lake City,
for respondents

---

JUSTICE HAGEN authored the opinion of the Court, in which
JUSTICE PETERSEN, JUDGE CHRISTIANSEN FORSTER, JUDGE LUTHY, and
JUDGE GRIFFIN joined.

Having recused themselves, CHIEF JUSTICE DURRANT,
ASSOCIATE CHIEF JUSTICE PEARCE, and JUSTICE POHLMAN do not
participate herein; COURT OF APPEALS JUDGE
MICHELE M. CHRISTIANSEN FORSTER, COURT OF APPEALS JUDGE
JOHN D. LUTHY, and DISTRICT COURT JUDGE ROGER W. GRIFFIN sat.

---

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1    This case concerns the attempted incorporation of a new municipality called West Hills in Summit County. The voters who live within the proposed boundaries of West Hills were set to vote on whether to approve or reject the incorporation on November 4, 2025.

¶2    But the validity of the ballot measure had been challenged in court by a group of landowners who own property within West Hills' proposed boundaries. Those landowners could have requested that their property be excluded from incorporation, except that the incorporation sponsor modified the proposal to include their property only after the final statutory deadline to request exclusion had passed.

¶3    Three weeks before the election, the district court granted the landowners' motion for summary judgment and ruled that Utah's Municipal Incorporation Code was unconstitutional as applied. Specifically, the court determined that the incorporation code violated the Uniform Operation of Laws Clause of the Utah Constitution because it did not allow the plaintiff landowners to request that their property be excluded from West Hills' boundaries, even though similarly situated landowners were allowed to do so. Accordingly, the district court invalidated and set aside the certification of the West Hills ballot measure.

¶4   The sponsor of the incorporation filed an emergency petition for extraordinary relief in this court under Utah Rule of Appellate Procedure 19, arguing that the district court abused its discretion when it ruled that the challenged provisions of the incorporation code were unconstitutional. Given the time sensitive nature of the petition, we granted the sponsor's request for expedited review.

¶5   After expedited briefing and oral argument, we denied the sponsor's petition in an order issued on October 28, 2025. We explained, "Under the unique circumstances of this case, [the sponsor] has not persuaded us to exercise our discretion to grant extraordinary relief given the potential disruption to the election process by issuing a writ at this juncture." Our denial was without prejudice to the sponsor appealing from a final judgment or seeking interlocutory review of the district court's October 14 order.

¶6   We now issue this written opinion explaining our reasons for denying the petition.

## BACKGROUND

¶7   This case arises from a proposed municipal incorporation measure. Petitioner Derek Anderson is the sponsor of the proposed town of West Hills. The town of West Hills, if incorporated, would lie north of Highway 248, just west of Kamas, near Jordanelle Reservoir in Summit County.

¶8   Jennifer McCaffrey, Kris Klein, Patsy Klein, Tyler Gough, Chanelle McGregor, Kurt Larsh, Lindy Sternlight, Dan Sternlight, Scott Earl, and DeEtte Earl are landowners whose properties lie within or near the proposed boundaries of West Hills. These landowners challenged the incorporation measure in district court, alleging that certain provisions of the Municipal Incorporation Code as applied to them violated the Uniform Operation of Laws Clause of the Utah Constitution.[1]

*The Municipal Incorporation Process*

¶9   At the time Anderson began his efforts to incorporate the town of West Hills, the incorporation code required a sponsor to file a request for a feasibility study with the Lieutenant Governor.

---

[1] The plaintiff landowners brought three other causes of action, challenging the measure under other provisions of the Utah Constitution. Those claims are not at issue in this petition.

*See* UTAH CODE § 10-2a-203(2) (2023). The Lieutenant Governor was then required to issue notices to affected landowners, commission a feasibility study, and hold public hearings. *See generally id.* § 10-2a-203 (2023); *id.* § 10-2a-205 (2023); *id.* § 10-2a-207 (2023). Utah Code section 10-2a-203 provided that a certain class of landowners, termed "specified landowner[s]," could seek to have their property excluded from the town's proposed boundaries if the specified landowner's property was more than "1% of the assessed value of all property within the boundaries of a proposed incorporation" or "10% of the total private land area within the boundaries of a proposed incorporation." *Id.* § 10-2a-203(1)(c)(i) (2023).

¶10 If a specified landowner requested exclusion, the Lieutenant Governor was required to grant the request unless "the exclusion [would] leave an unincorporated island within the proposed municipality" and "the property receive[d] from the county a majority of currently provided municipal services." *Id.* § 10-2a-203(4)(a)–(b) (2023). The incorporation code provided two thirty-day periods where specified landowners could seek exclusion. The first began after the landowner received notice of the proposed incorporation measure from the Lieutenant Governor. *Id.* § 10-2a-203(3) (2023). The second began after the Lieutenant Governor held the first public hearing. *Id.* § 10-2a-207(5)(a) (2023). After the second exclusion period expired, the incorporation code provided that "under no circumstances may property be excluded or annexed from the proposed incorporation." *Id.* § 10-2a-207(9)(a)(iii) (2023).

¶11 But the boundaries of the proposed municipality were not necessarily fixed at that time. The incorporation code allowed the sponsor to submit a modified request that altered the boundaries of the proposed incorporation under certain circumstances, including if specified landowners successfully sought exclusion or if the feasibility study showed that the incorporation would not meet the statutory revenue requirements. *See id.* § 10-2a-206(1)(a) (2023); *id.* § 10-2a-207(5)(d). A modified request triggered a supplemental feasibility study, but not a new first public hearing. *See generally id.* § 10-2a-204; *id.* § 10-2a-206 (2023); *id.* § 10-2a-207 (2023). Under the version of the incorporation code at issue in this case, the sponsor could file successive modified requests, which could alter the boundaries and sweep in additional landowners each time the results of the supplemental feasibility study showed that the incorporation did not meet the statutory revenue requirements. *Id.* § 10-2a-206(6)(a) (2023).

¶12 If a modification request expanding the proposed boundaries was filed more than thirty days after the first public hearing, any newly affected landowners had no opportunity to request exclusion, even if they met the definition of specified landowners. *See id.* § 10-2a-207(9)(a)(iii) (2023). Instead, once a successful supplemental feasibility study was returned, the Lieutenant Governor proceeded with the second public hearing and then certified the measure to be placed on the ballot. *Id.* § 10-2a-207(6) (2023); *id.* § 10-2a-209 (2023)(1)(b).

*The Proposed Incorporation of West Hills*

¶13 The sponsor of West Hills' incorporation submitted a request for a feasibility study to the Lieutenant Governor in April 2023. The Lieutenant Governor held the first public hearing in February 2024. Following that hearing, numerous specified landowners exercised their exclusion option prior to the deadline on March 13, 2024.

¶14 As a result of the requested exclusions, the sponsor filed a modified request for a supplemental feasibility study on June 30, 2024. The modified request added properties owned by Jennifer McCaffrey, Kris and Patsy Klein, Tyler Gough, and Chanelle McGregor. The Lieutenant Governor rejected the request because the modified proposal failed to meet the minimum population requirements. *See id.* § 10-2a-201.5(1)(a)(ii) (2023). The sponsor then submitted an amended modified request on October 11, 2024, this time adding property owned by Kurt Larsh.

¶15 The Lieutenant Governor accepted the second modified request, commissioned a supplemental feasibility study, and held a second public hearing in January 2025. The following month, the Lieutenant Governor certified the West Hills incorporation measure to be placed on the November 2025 ballot. Based on information provided by the plaintiff landowners, approximately ninety-six registered voters are eligible to vote on the incorporation measure. *See* Connor Thomas, *Utah Supreme Court Takes Up Emergency Appeal for West Hills Election*, KPCW (Oct. 20, 2025), https://www.kpcw.org/summit-county/2025-10-20/utah-supreme-court-takes-up-emergency-appeal-for-west-hills-election.

¶16 The plaintiff landowners decided not to take their chances at the ballot box. Litigation ensued.

*Litigation in District Court*

¶17 The plaintiff landowners filed their action in the district court in May 2025, claiming, among other things, that the incorporation code as applied to them violated the Uniform Operation of Laws Clause of the Utah Constitution. The sponsor initially sought an extension to answer the plaintiff landowners' action. Shortly after filing their petition, the plaintiff landowners moved for summary judgment on this claim. The sponsor sought another extension of time to respond to that motion. Eventually, the sponsor filed an opposition to the plaintiff landowners' summary judgment motion and later cross-moved for summary judgment on the same claim.

¶18 The district court set a hearing on the plaintiff landowners' motion for August 15, but the hearing was later moved back to August 22 at the sponsor's request. The sponsor again asked the court to push back the hearing to allow the parties to complete briefing on the sponsor's cross-motion and allow the court to rule on both motions at the same time. The district court set the hearing for September 16.

¶19 After the hearing, the district court requested supplemental briefing, which was completed on October 6, approximately one month before the November election. In the sponsor's supplemental brief, he urged the district court to defer ruling on the summary judgment motions until after the election so that the ruling would not impact how voters cast their ballots. Despite expressing some initial trepidation about ruling before the election, the district court issued a decision on the merits on October 14, three weeks before election day.

¶20 In its decision, the district court determined that the plaintiff landowners qualified as specified landowners who would have been entitled to exclusion if their property had been added to the proposed boundaries of West Hills before the statutory deadline for exclusion had passed. The court concluded that "[t]he legislature's objective of creating certainty and preventing an endless cycle of boundary changes does not warrant the disparate treatment of specified landowners in this case." The court ruled that the challenged provisions of the incorporation code were unconstitutional as applied and invalidated and set aside the Lieutenant Governor's certification of the proposed incorporation measure. The order was issued the same day that the Summit County Clerk began sending mail-in ballots to voters.

*Aftermath of the District Court's Ruling*

¶21 The district court's ruling was reported by statewide and local media. *See, e.g.*, Robert Gehrke, *Utah's Incorporation Law is Unconstitutional, Votes for Summit County Ballot Measure Won't Count, Judge Rules*, SALT LAKE TRIB. (Oct. 15, 2025), https://www.sltrib.com/news/politics/2025/10/15/utahs-incorporation-law-is/; Eva Herinkova, *West Hills Incorporation Declared Unconstitutional Weeks Before Election Day*, PARK REC. (Oct. 16, 2025), https://www.parkrecord.com/2025/10/16/west-hills-incorporation-declared-unconstitutional-weeks-before-election-day/. Although one headline stated that "Votes for Summit County Ballot Measure Won't Count, Judge Rules," *see* Gehrke, *supra*, the court's ruling said nothing about whether votes cast on the measure could be counted. But the press reported statements by the Clerk that although the measure would still appear on the ballot, the votes would not be counted. *Id.* One local newspaper quoted the Clerk saying, "Our plan right now is not to count the votes. We will be notifying voters of the change." Herinkova, *supra*.

¶22 By the following day, the Summit County Clerk's Office had posted a notice to its website saying the West Hills ballot measure was invalidated and votes would not be counted. The Clerk also sent an email notice to a listserv of Summit County Voters that said: "The 3rd District Court has invalidated the West Hills Incorporation Race. Votes in that race will not be counted. As a result, there are no races for voters within the 22MRN:H precinct." On or around October 20, voters received a written notice with the same message in the mail.

¶23 According to the plaintiff landowners, in response to the district court's ruling and the Clerk's official notices, they and other "voters opposing the incorporation measure . . . [took] their campaign signs down" and "canceled political events." Counsel for the plaintiff landowners recalled in oral argument that she had advised her clients, "Everybody can stand down. There is no more election. They can cancel their events. They can take down their signs. They don't need to worry about the vote at this point because there was no election."

¶24 At 6:30 p.m. on Friday, October 17, three days after the district court's order, the sponsor filed a petition for extraordinary relief with this court, asking us to reverse the district court's October 14 order. The sponsor also filed a motion for expedited review pursuant to rule 23C of the Utah Rules of Appellate

Procedure. On Saturday morning, we issued an order granting the rule 23C motion, calling for a response by October 23 and setting oral argument for October 28.

¶25  On the day the petition was filed, the sponsor was under the impression that "ballots [were] already in voters' hands." The following week, on October 21, the sponsor informed this court that he had learned from the Summit County Clerk that not all mail-in ballots had been mailed to voters prior to the district court's ruling and that the Clerk had subsequently ceased mailing those ballots. The Clerk informed the sponsor that she would not resume sending ballots unless there was a stay of the district court's order or a reversal of that order by this court. The last day the Clerk could mail ballots to voters was October 28, "seven calendar days before election day," *see* UTAH CODE § 20A-3a-202(2)(a), the same day we had set for oral argument.

¶26  Upon learning this information, the sponsor sought a stay in the district court on October 20, six days after the district court issued its order. The district court denied the sponsor's request two days later. The sponsor then sought a stay in this court, which we granted on October 24. In the sponsor's reply memorandum, he urged this court to rule before the election, claiming circumstances had changed.

¶27  After we issued the stay, at least one local newspaper reported, "The Summit County Clerk's Office will count ballots cast for the proposed West Hills township on Election Day after all, in light of a Utah Supreme Court order pausing proceedings in a property rights lawsuit opposing the incorporation process." Eva Herinkova, *West Hills Ballots Will Be Counted After All Following Utah Supreme Court Order*, PARK RECORD, (Oct. 28, 2025), https://www.parkrecord.com/2025/10/28/west-hills-ballots-will-be-counted-after-all-following-utah-supreme-court-order/. But it noted that this court had scheduled oral argument for October 28, "signaling the situation may change again one week before Election Day if the high court reverses its order." *Id.*

¶28  Once the stay was in place, the Clerk indicated that votes cast on the West Hills' measure would be counted pending a decision from this court. *See* Connor Thomas, *West Hills Votes Will Be Counted, Pending Final Ruling*, KPCW (Oct. 27, 2025), https://www.kpcw.org/summit-county/2025-10-25/west-hills-votes-will-be-counted-pending-final-ruling.       Based       on representations made during oral argument, the incorporation

measure was the only item on the ballot. Counsel represented that if a voter, believing the election was off, made the unlikely choice to sign and return a blank ballot, the Clerk intended to treat it as a submission and the voter would not be allowed to cast a new ballot, but the Clerk's office would allow registered voters who had discarded or not received a mail-in ballot to vote in person.

¶29 After hearing argument on October 28, we issued an order the same day declining to exercise our extraordinary writ authority to reverse the district court's October 14 order. In our order, we stated, "Under the unique circumstances of this case, [the sponsor] has not persuaded us to exercise our discretion to grant extraordinary relief given the potential disruption to the election process." Our denial of the petition was without prejudice to the sponsor's ability to appeal the district court's October 14 order in the ordinary course.

## ANALYSIS

¶30 This is not an appeal from the district court's October 14 order, but an original proceeding in this court. The sponsor sought relief from the district court's order by filing a petition under rule 19(a) of the Utah Rules of Appellate Procedure. Under that rule, "a person may petition an appellate court for extraordinary relief referred to in Rule 65B of the Utah Rules of Civil Procedure." UTAH R. APP. P. 19(a).

¶31 Rule 65B of the Utah Rules of Civil Procedure is a procedural rule for managing our constitutional authority to issue extraordinary writs. *State v. Barrett*, 2005 UT 88, ¶ 8, 127 P.3d 682; *see also Patterson v. State*, 2021 UT 52, ¶¶ 77, 79, 504 P.3d 92. The rule provides that "[w]here no other plain, speedy and adequate remedy is available, a person may petition the court for extraordinary relief on any of the grounds set forth" therein. UTAH R. CIV. P. 65B(a). One of the grounds for which the court "may" grant relief, is "where an inferior court . . . abused its discretion." *Id.* R. 65B(d)(2)(A).

¶32 The sponsor argues that the district court abused its discretion by wrongly declaring the challenged portions of the incorporation code unconstitutional. We have recognized that "a mistake of law may constitute an abuse of discretion" within the meaning of rule 65B. *F.L. v. Ct. of Appeals*, 2022 UT 32, ¶ 17, 515 P.3d 421 (cleaned up). "However, even where a mistake of law or abuse of discretion is found, this court nonetheless retains discretion whether to grant the relief requested." *Id.* (cleaned up).

¶33 Because extraordinary relief is discretionary, "a showing that an inferior court abused its discretion under rule 65B(d)(2) only gets a petitioner a foot in the door." *Kamoe v. Ridge*, 2021 UT 5, ¶ 10, 483 P.3d 720. In other words, "a lower court's abuse of discretion establishes adequate grounds for relief, but a reviewing court may nevertheless withhold relief." *Id.* (cleaned up). "Unlike a party filing a direct appeal, a petitioner seeking rule 65B(d) extraordinary relief has no right to receive a remedy that corrects a lower court's mishandling of a particular case." *Barrett*, 2005 UT 88, ¶ 23. This means that "we may elect not to issue an extraordinary writ even if we disagree with a lower court decision on its merits." *Friends of Great Salt Lake v. Utah Dep't of Nat. Res.*, 2017 UT 15, ¶ 68, 393 P.3d 291. Ultimately, "whether to grant a petition for extraordinary relief lies within the sound discretion of this court." *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 22, 299 P.3d 1058.

¶34 In this case, we treat whether to exercise our discretion to grant relief as "a threshold question." *Cox v. Laycock*, 2015 UT 20, ¶ 19, 345 P.3d 689. Previously, "we have outlined a number of nonexclusive factors a court may consider in deciding whether to grant a petition for extraordinary relief," including "the egregiousness of the alleged error, the significance of the legal issue presented by the petition, and the severity of the consequences occasioned by the alleged error." *Utah v. Boyden*, 2019 UT 11, ¶ 43, 441 P.3d 737 (cleaned up). "Additional factors may color or control our analysis . . . and in each instance, the determination of whether to grant relief is tailored to the proceedings' particular issues and circumstances." *Id.*

¶35 In election cases, factors affecting the orderly administration of the election are often central to our analysis. For instance, we have declined to grant relief in election cases where a petition was filed late in the election process. *See, e.g., In re Cook*, 882 P.2d 656, 659 (Utah 1994) (declining to grant relief where there was a delay in bringing the petition and in the meantime, "the ballots and voter information pamphlets were sent to the printer, the voter information pamphlet was given to the press for distribution, at least some of the voter information pamphlets were distributed to the public, and an unknown number of absentee ballots were cast based thereon"); *Clegg v. Bennion*, 247 P.2d 614, 616 (Utah 1952) (per curiam) (declining to grant relief where the petitioner waited until "after the convention had met, accepted and nominated the declarants" to challenge a candidate who filed his declaration of candidacy one day late); *cf. Zonts v. Pleasant Grove City*, 2017 UT 71,

¶ 5 n.2, 416 P.3d 360 (per curiam) (noting that "the parties in some election cases appear to have failed to appreciate the importance of timely initiation of proceedings in the proper forum and of anticipating the practical requirements of meeting the timeline for an ultimate resolution").

¶36 We have also expressed concern where "the requested relief would cause a serious disruption of election process, including risk of interference with the rights of absentee and other voters." *In re Cook*, 882 P.2d at 659 (cleaned up). So has the United States Supreme Court. "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam); *see also Williams v. Rhodes*, 393 U.S. 23, 35 (1968) (explaining that "the confusion that would attend [the requested] last-minute change [to a ballot] poses a risk of interference with the rights of other [voters], for example, absentee voters").

¶37 Here, we decline to exercise our discretion to grant the sponsor's petition for extraordinary relief because a writ vacating the district court's order and allowing the election to proceed would be ill-advised under the circumstances. This matter was not submitted to the district court for decision until September 16. The court was initially inclined "to wait until after the election and only to issue a decision if the voters approved the incorporation of West Hills." But after supplemental briefing on that issue, the court concluded that it was better to decide the issue prior to the election to "avoid[] voter confusion and sav[e] voters and advocates time and costs of electioneering." The court promptly issued its opinion on October 14, but at that point, the election was only three weeks away.

¶38 It was widely reported that the district court had declared the West Hills incorporation measure unconstitutional and that any votes cast for or against the measure would not be counted. Official notices were also posted on the Clerk's website, sent by email to a listserv of registered voters, and directly mailed to affected voters. Each of those notices advised voters that "[t]he 3rd District Court has invalidated the West Hills Incorporation Race" and stated, "Votes in that race will not be counted." Counsel for the plaintiff landowners advised her clients to "stand down" their campaign against the incorporation measure. And, according to the plaintiff

landowners, "Everyone opposing incorporation stepped down from their soapboxes." The sponsor does not dispute the representation that opponents took down campaign signs and canceled political events.

¶39 The sponsor filed a petition for extraordinary relief three days after the district court issued its order. But the sponsor did not seek a stay of the district court's order until three days later. Four more days elapsed before a stay was entered. In the intervening ten days, voters had already been told that their votes on the measure would not be counted. And we do not know how many interested parties—both for and against incorporation—suspended their electioneering efforts during those consequential ten days.

¶40 When this case was submitted for decision seven days before Election Day, any voters tracking the latest developments in this case who had received and saved their mail-in ballots still had time to vote by mail. But others may have discarded their mail-in ballots after receiving official word that the election on the incorporation measure—the only item on the ballot—had been called off. Although it was still possible for those voters to obtain a replacement ballot in person, some may have been physically unable to travel to a polling place, and others may have left town or become otherwise unavailable to vote in person in reliance on those notices. And given the shifting and potentially confusing developments surrounding this election, even those able to vote in person may not have realized that they had the option to do so in the short time remaining before the election. If the surrounding circumstances resulted in suppressing the vote of even a handful of the roughly ninety-six eligible voters, it had the potential to swing the election.

¶41 With only seven days to go before Election Day, we lacked confidence that the damage done to the orderly administration of this election could be rectified. The impact on electioneering efforts and the risk of voter suppression was too great. For those reasons, we declined to exercise our discretion to issue a writ granting extraordinary relief.

## CONCLUSION

¶42 For the foregoing reasons, the sponsor's petition for extraordinary relief has been denied. As stated in our prior order, our denial of the petition is without prejudice to the sponsor appealing the district court's order in the ordinary course.

---