**2023 UT 12**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee*,

*v.*

DAVID CHADWICK,
*Appellant.*[1]

No. 20190818
Heard February 10, 2023
Filed June 8, 2023

On Motion for Access to Court Records Associated with Case

Fourth District, Provo
The Honorable James R. Taylor
No. 171400984

Attorneys:

William M. Hains, Asst. Solic. Gen., Sean D. Reyes, Att'y Gen.,
Salt Lake City, for appellee

Douglas J. Thompson, Jennifer Foresta, Provo, for appellant

Paul Cassell, Heidi Nestel, Crystal C. Powell, Salt Lake City, for
limited-purpose party F.L.

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, JUSTICE HAGEN,
and JUDGE CORNISH joined.

Having recused herself, JUSTICE POHLMAN did not participate herein;
DISTRICT COURT JUDGE RITA M. CORNISH sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

---

[1] Consistent with our decision in *F.L. v. Court of Appeals*, 2022 UT 32, 515 P.3d 421, F.L. participates in this matter as a limited-purpose party.

### Introduction

¶1 David Chadwick was charged with four counts of sexual abuse of a child, F.L. In defending his case, Mr. Chadwick requested that the trial court review the records of several entities that had provided mental health services to F.L. to determine whether the records contained information relevant to the charges against him. The court issued an order authorizing in camera review of the records, then, pursuant to that order, provided Mr. Chadwick with relevant snippets from the records and sealed the undisclosed records.

¶2 Mr. Chadwick was convicted on one of the four counts, and he appealed. Upon receiving the case record, the court of appeals unsealed F.L.'s therapy records, at which time Mr. Chadwick used those previously sealed records to prepare his appellate brief.

¶3 When F.L. learned that her records had been unsealed, she obtained legal counsel and asked the court of appeals to re-seal her records. The court did so. F.L. also asked the court of appeals for permission to participate in Mr. Chadwick's appeal as a limited-purpose party. That issue came to us, and we reviewed and granted F.L.'s request.

¶4 The court of appeals certified the case to us, and we issued a briefing schedule. Rather than filing a brief on the merits of his appeal, Mr. Chadwick filed the motion now at issue. Citing rule 4-202.04 of the Utah Code of Judicial Administration,[2] he seeks access to F.L.'s therapy records that the trial court sealed after its in camera review. He claims that without access to the requested records, his counsel is prevented from preparing an adequate appellate brief or zealously advocating on his behalf.

¶5 Because the balance of interests weighs in favor of keeping F.L.'s therapy records sealed during appellate review, and no reasonable alternative to closure adequately protects those interests, we deny Mr. Chadwick's request.

### Background

¶6 Mr. Chadwick was charged with four counts of sexual abuse of a child, F.L. Before his trial commenced, Mr. Chadwick asked the

---

[2] Rule 4-202.04 was recently amended, effective May 1, 2023. In this opinion, we reference the 2016 version of the rule, which was in effect at the time of oral argument in this matter.

trial court to conduct an in camera review of F.L.'s therapy and counseling records and release any portions containing material or exculpatory information. He first sought the trial court's review and release of the records by motion. In that motion, Mr. Chadwick claimed that the records "contain references to the incidents alleged to have occurred" in his case. He requested that the court (1) conduct an in camera review of F.L.'s therapy and counseling records; (2) release the portions of the records that are material to his defense; (3) ensure a proper record of its in camera review, with an index of documents; and (4) seal and retain copies of all in camera information as part of the court record. He also described our caselaw recognizing a defendant's right to receive additional records as they become relevant during trial.

¶7 But before the State responded to Mr. Chadwick's motion, and before the court ruled on it, the State indicated it would not oppose the court's in camera review of the records. So rather than assessing Mr. Chadwick's motion, the court asked the parties to prepare a proposed order directing that the records be provided for its review.

¶8 Mr. Chadwick prepared the requested proposed order, which the State signed off on. Under the proposed order, Mr. Chadwick was authorized to issue subpoenas to seven entities—Motivational Empowerment Counseling, Wasatch Mental Health, Center for Change, Sandy Counseling Centers, Provo Canyon Behavioral Health,[3] Meadow Elementary School, and Snow Springs Elementary School—requiring them to deliver all of F.L.'s therapy and counseling records under their control to the court. The proposed order provided that the court was to conduct an in camera review of the records and "disclose only those portions" that contained information falling within three categories: (1) "a factual description of alleged abuse by Mr. Chadwick and circumstances surrounding those events"; (2) "any report of those events by the counselor to law enforcement"; or (3) "any methods used to refresh or enhance the memory of [F.L.] regarding those events." The proposed order also restricted the disclosure and dissemination of the records, and it stated that the "[r]ecords received for review . . . which are not

---

[3] The trial court and the parties have referred to Provo Canyon Behavioral Health by varying names, including Provo Canyon Hospital and Provo Behavioral Health. For consistency, we use Provo Canyon Behavioral Health throughout this opinion.

disseminated shall be retained as part of the Court record but shall be sealed documents."

¶9 The court signed the order as prepared and agreed upon by the parties, and Mr. Chadwick sent subpoenas to the listed entities. After reviewing the records it received from Motivational Empowerment Counseling, Wasatch Mental Health, Center for Change, Sandy Counseling Centers, and Provo Canyon Behavioral Health,[4] the court issued written rulings summarizing its findings for each set of records. It found that the records from three of the entities, Center for Change, Sandy Counseling Centers, and Provo Canyon Behavioral Health, contained no information falling within the parameters of the order.

¶10 The court further found that the records from two of the entities, Motivational Empowerment and Wasatch Mental Health, did contain information falling within the parameters of the order. With respect to the records reviewed from Motivational Empowerment, the court identified a "brief reference" to Mr. Chadwick. It quoted that reference in its written ruling and stated that the records did not contain any other information falling within the parameters of the order. With respect to the records reviewed from Wasatch Mental Health, the court identified seven clinical notes that fit within the three relevant categories outlined in the order authorizing the in camera review. The court's written ruling quoted those clinical notes and stated that the court "did not observe any other notes, description[,] or information in the records" falling within the parameters of the order.

¶11 The court never provided Mr. Chadwick with the records themselves, redacted or otherwise. So besides the single quote from the Motivational Empowerment records and the excerpted seven clinical notes from the Wasatch Mental Health records, which were included as part of the court's written rulings following its in camera review, Mr. Chadwick was not privy to the information contained in F.L.'s therapy records. As set out in the court's order, after the court's in camera review, the portions of the records that were not provided to the parties became sealed.

---

[4] We are not asked to address issues relating to the subpoenas sent to Meadow Elementary School and Snow Springs Elementary School.

¶12 F.L. testified at Mr. Chadwick's trial. During cross-examination, Mr. Chadwick's counsel asked F.L. about her experience with therapy. Counsel specifically asked F.L. about her experience at Wasatch Mental Health, Center for Change, Sandy Counseling Centers, and Provo Canyon Behavioral Health and whether she told her therapists that she did not remember details about sexual abuse occurring in her house. F.L. testified that she told her therapists "parts of the details" about the abuse but that "when they pushed, [she] wouldn't talk." When Mr. Chadwick's counsel asked follow-up questions about what F.L. had discussed with her therapists, she said she could not answer unless she knew the name of the therapist to whom counsel was referring.

¶13 Shortly after questioning F.L., Mr. Chadwick's counsel complained to the court that it was "more aware" of the information in F.L.'s therapy records than he was because "[o]nly portions were released to Counsel." Counsel also noted to the court that he believed it had "a continuing obligation to release portions [of the records] that become relevant as the trial progresses." The court responded that there was "just no way that [it] could comply with that" obligation because when it reviewed the records, it "was looking for the specific areas of question that were included in the order." The court further stated that it was "not in a position to have digested the full import of th[e] records."

¶14 Mr. Chadwick was convicted of one count of sexual abuse of a child, and he appealed. F.L.'s therapy records were not initially included in the court record on appeal, so Mr. Chadwick moved for the court of appeals to correct the omission. In the motion, to which the State stipulated, the parties asked the court to ensure that the records were "in a sealed envelope or container; and that the envelope or container be clearly labeled 'Sealed Court Records: Witness Mental Health Records.'" The parties also asked for clarification about whether F.L.'s therapy records were "'sealed court records' accessible only by court order," and Mr. Chadwick indicated that he intended to seek an order authorizing his counsel to access the records on appeal.

¶15 The court of appeals granted Mr. Chadwick's motion to correct the appellate record. Shortly thereafter, on its own motion, the court unsealed F.L.'s therapy records, ordering that they be

classified as "private," not "sealed," for the purposes of Mr. Chadwick's appeal.[5]

¶16 Upon the court of appeals' unsealing of the records, Mr. Chadwick's counsel reviewed all the records reviewed in camera by the trial court and filed an opening appellate brief, which discussed details from the previously sealed records. The State then moved the court of appeals to re-seal F.L.'s therapy records and to strike all references to the records from Mr. Chadwick's brief. The court denied those motions but ordered that the record and the parties' briefs be designated as "private" for purposes of appeal.

¶17 F.L. then obtained legal counsel and moved for enforcement of her rights as a crime victim. She claimed in her motion that by releasing her confidential records to Mr. Chadwick, the court of appeals had violated her state constitutional rights under Utah's Victims' Rights Amendment (VRA). In addition, she argued that she was entitled to have the court of appeals re-seal her therapy records and direct that all references to the records be stricken from Mr. Chadwick's brief.

¶18 In response to F.L.'s motion, the court of appeals ordered that F.L.'s records be re-sealed and that Mr. Chadwick file a revised brief omitting reference to the sealed records. The court later ordered Mr. Chadwick to return all of F.L.'s therapy records that were in his possession.

¶19 As the court of appeals had directed, Mr. Chadwick filed a revised brief, which omitted any reference to F.L.'s sealed therapy records. He argued that his rights to appeal, to due process, and to fundamental fairness were violated by his inability to access the records. He requested that the court either (1) designate the records as private—thus permitting Mr. Chadwick's access to them—or

---

[5] The distinction between "private" court records and "sealed" court records is consequential because while, generally, "no one may access a sealed court record except by order of the court," a private court record is accessible by various parties, including "a party" or an "attorney for a party . . . to litigation in which the record is filed." UTAH R. JUD. ADMIN. 4-202.03(2), (3)(C). In other words, Mr. Chadwick and his counsel are entitled to access private court records, but, absent a court order, they are prohibited from accessing sealed court records.

(2) examine the records itself, reviewing the trial court's materiality determination de novo.

¶20 F.L. then moved to intervene as a limited-purpose party, requesting that she be permitted to file briefs on issues relating to her confidential records. She maintained that her rights would be violated if her confidential records were disclosed. The court of appeals construed F.L.'s motion for intervention as a motion for leave to file an *amicus curiae* brief and granted the motion. In response, F.L. sought relief from this court. She requested that we review the court of appeals' denial of her motion to intervene as a limited-purpose party. We did.[6] We reversed the court of appeals' decision and remanded for F.L. to participate in Mr. Chadwick's appeal as a limited-purpose party.[7]

¶21 Upon remand to the court of appeals, that court certified Mr. Chadwick's appeal to this court for original review and determination because it concluded that the appeal "presents several important and novel questions regarding the scope of appellate review of the district court's in camera decision to withhold or disclose a victim's confidential therapy records, as well as interpreting provisions of the Utah Victims' Rights Amendment." After the case was certified to us, we issued an order indicating that Mr. Chadwick would be permitted to file a replacement brief and specifying the briefing schedule. Instead of filing a brief on the broader merits of his appeal, Mr. Chadwick filed the motion now under review.

**Standard of Review**

¶22 Mr. Chadwick invokes rule 4-202.04 of the Utah Code of Judicial Administration in requesting access to F.L.'s sealed therapy records for purposes of preparing an appellate brief. This is an issue for which there is no lower court ruling to review, so we address the issues raised in Mr. Chadwick's motion as a matter of law.[8]

---

[6] *See F.L. v. Court of Appeals*, 2022 UT 32, ¶¶ 4–5, 515 P.3d 421.

[7] *Id.* ¶ 43.

[8] *Cf. State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 ("An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law.").

## Analysis

¶23 Rule 4-202.04 of the Utah Code of Judicial Administration "establish[es] the process for accessing a court record associated with a case."[9] The rule provides that "[a] person not authorized to access a non-public court record may file a motion to access the record."[10] In ruling on a motion or petition under the rule, a court must do three things: (1) "make findings and conclusions about specific records";[11] (2) "identify and balance the interests favoring opening and closing the record";[12] and (3) "if the record is ordered closed, determine there are no reasonable alternatives to closure sufficient to protect the interests favoring closure."[13]

¶24 The rule permits a court to "consider any relevant factor, interest, or policy" in deciding whether to grant someone access to a court record.[14] Another rule, rule 4-202, describes several considerations that could be relevant to a court's analysis, but the list is not exhaustive.[15] If a court decides to grant someone access to a record pursuant to rule 4-202.04, it "may impose any reasonable conditions to protect the interests favoring closure."[16]

¶25 Mr. Chadwick asks us to balance his interest in accessing F.L.'s sealed therapy records for purposes of drafting an "adequate appellate brief" against the State's and F.L.'s interests in keeping the records sealed. He requests access to the records and encourages us to impose "any reasonable protective conditions" we deem necessary.

---

[9] UTAH R. JUD. ADMIN. 4-202.04 (2016).

[10] *Id.* R. 4-202.04(2)(B).

[11] *Id.* R. 4-202.04(6)(A). For purposes of complying with this requirement, the statements in the Background section of this opinion constitute our findings about F.L.'s therapy and counseling records.

[12] *Id.* R. 4-202.04(6)(B).

[13] *Id.* R. 4-202.04(6)(C).

[14] *Id.* R. 4-202.04(6).

[15] *See id.* R. 4-202.

[16] *Id.* R. 4-202.04(2)(B).

¶26 In particular, Mr. Chadwick identifies the following factors and rights that he argues favor turning the records over to him for purposes of appeal: the rules of the Utah Code of Judicial Administration, his right to appeal, and his due process rights to fundamental fairness and effective assistance of counsel. Although he acknowledges F.L.'s and the State's interests in the records, he contends that, based on the balance of interests, he is entitled access to the records. The State and F.L. disagree. In their view, their interests in keeping the records sealed outweigh any claim Mr. Chadwick has to accessing the records.

¶27 Below we identify and balance the parties' interests. For three reasons, we determine that the interests favoring closure outweigh the interests favoring Mr. Chadwick's access to the records on appeal. First, we find it significant that the parties agreed to the trial court's sealing of all nonrelevant records after its in camera review. Second, United States Supreme Court caselaw indicates that Mr. Chadwick's constitutional rights are not violated by his current inability to access F.L.'s therapy records. And third, F.L.'s interest in the privacy of her therapy records, in tandem with the State's interest in protecting the therapist-patient privilege, weighs in favor of keeping the records sealed during appellate review.

¶28 After balancing the parties' interests, we discuss the alternative approaches Mr. Chadwick proposes and conclude that they fail to protect F.L.'s and the State's interests in the records.

## I. The Interests Favoring the Records' Closure Outweigh Those Favoring Mr. Chadwick's Access

*A. The Trial Court's Sealing of the Presumptively Privileged Records Weighs in Favor of Keeping the Records Sealed During Appellate Review*

¶29 Mr. Chadwick claims that under the Utah Code of Judicial Administration, the records he seeks to access should be classified as private. He explains:

> Nothing in our rules or law requires that mental health records of a complaining witness or victim be permanently designated as "sealed" when they become part of the court record. Nothing in our rules or law required the district court to designate the unreleased portion of the mental health records to be designated as "sealed" following the *in camera* review. Nothing in our rules or law required the court of appeals to re-seal the mental health records and prevent [Mr.] Chadwick from accessing or utilizing them on appeal. And

> nothing in our rules or law prevent this Court from authorizing the parties to access the records now.

Specifically, Mr. Chadwick complains that F.L.'s mental health records are currently classified as "sealed" even though the Utah Code of Judicial Administration classifies "medical, psychiatric, or psychological records" and "record[s] submitted for in camera review" as "private."[17]

¶30 But Mr. Chadwick overlooks two important facts. First, F.L.'s therapy records are presumptively privileged.[18] Notably, the records classification provisions that Mr. Chadwick references do not refer to presumptively privileged records. And if presumptively privileged medical, psychiatric, and psychological records were classified as "private"—meaning a party or an attorney for a party may access them—then Mr. Chadwick would have been entitled to access F.L.'s therapy records even before the trial court reviewed them to determine whether they were discoverable. Similarly, a record is not automatically deemed to become "private" upon being "submitted for in camera review" as Mr. Chadwick suggests.[19] If that were true, then, again, Mr. Chadwick would have been entitled to access F.L.'s therapy records even before the trial court's review. Accordingly, the Utah Code of Judicial Administration provisions Mr. Chadwick references do not address the situation we have here, where a trial court is reviewing presumptively privileged information in camera to determine if it is discoverable.[20]

---

[17] (Quoting UTAH R. JUD. ADMIN. 4-202.02(4)(N), (U).)

[18] *See* UTAH R. EVID. 506(b) ("A patient has a privilege . . . to refuse to disclose and to prevent any other person from disclosing information that is communicated in confidence to a physician or mental health therapist for the purpose of diagnosing or treating the patient.").

[19] Stated fully, rule 4-202.02(4)(U) provides that a "record submitted for in camera review" is "private" "*until its public availability is determined.*" UTAH R. JUD. ADMIN. 4-202.02(4)(U) (emphasis added). We understand this to refer to situations in which a record is discoverable by the parties but where questions of admissibility need to be resolved before it is publicly disclosed.

[20] We encourage the advisory committee on the Utah Code of Judicial Administration to propose recommendations to address this gap in rule 4-202.02.

¶31 Second, upon conducting its review in camera, the trial court assessed whether the records should be publicly available and, under the terms of its order authorizing the review, identified and quoted portions of the records and then sealed the records.[21]

¶32 Mr. Chadwick benefited from the procedure the trial court followed during its in camera review. Ordinarily, for otherwise privileged communications between a patient and therapist to be subject to in camera review and disclosure, a defendant must show that the communications fall within an exception under rule 506(d) of the Utah Rules of Evidence.[22] In cases with facts similar to those presented in Mr. Chadwick's case, we have explained that the disclosure of communications between a patient and therapist is "limited and require[s] a showing with reasonable certainty that exculpatory evidence exists which would be favorable to the defense."[23] Here, Mr. Chadwick was relieved of the burden of meeting this "stringent test"[24] because the parties stipulated to the trial court order authorizing the court's in camera review.

¶33 In fact, Mr. Chadwick prepared the proposed order, which was the result of "an agreement" between the parties and the court. The court directed the parties to "prepare a stipulated order" that would allow for the records' delivery to the court. At the following hearing, Mr. Chadwick's counsel told the court, "[W]e took a little bit of time to get an agreement regarding the language that the Court was looking for on the order for the mental health records . . . . [W]e do have an agreement now, and I filed the agreed language [of the] proposed order this morning." The court signed the stipulated order. The "agreed language" of that order limited the scope of the court's review of F.L.'s therapy records. It provided that the court would

---

[21] Significantly, the records classification rule cited by Mr. Chadwick was recently amended to provide that "on appeal, any record previously designated as sealed by another court" is a sealed court record. UTAH R. JUD. ADMIN. 4-202.02(3)(I) (2023).

[22] *See, e.g., State v. Worthen,* 2009 UT 79, ¶ 14, 222 P.3d 1144 (explaining that "[t]he privilege described in rule 506(b) has three exceptions").

[23] *State v. Blake,* 2002 UT 113, ¶ 19, 63 P.3d 56 (cleaned up).

[24] *Id.* ("This is a stringent test, necessarily requiring some type of extrinsic indication that the evidence within the records exists and will, in fact, be exculpatory.").

"disclose only those portions" of the records that contained information falling within the three outlined categories. And it included an additional limitation on the court's in camera review, stating that the "[r]ecords received for review . . . which are not disseminated shall be retained as part of the Court record but shall be sealed documents."[25]

¶34 Despite Mr. Chadwick's agreeing to the limited scope of the court's relevance assessment below, now on appeal he endeavors to expand his rights under that review. Moreover, he now claims that the trial court's order was improper because it failed to provide context and lacked the findings necessary for the court to seal the records. But without the benefit of a merits brief on appeal, the extent to which Mr. Chadwick challenged the trial court's in camera review is not entirely clear. Although the record indicates that Mr. Chadwick mentioned to the trial court that "only portions" of the reviewed records were released to him and that the court was "more aware" of the information in the records than he was, his challenge has seemingly expanded on appeal. As F.L. notes, Mr. Chadwick did not ask the trial court to explain the legal standards it applied in conducting its review, nor did he inquire into the court's factual findings. F.L. also observes that although Mr. Chadwick did initially request, in his original motion for in camera review of the records, that the court maintain a privilege log, the court never ruled on that motion, and the stipulated order did not incorporate his request.

¶35 The State and F.L. do not deny that Mr. Chadwick may challenge the trial court's decisions concerning the records. The State concedes he may challenge the court's decision to release only some of the records it reviewed. And it admits he may argue that the trial court erred in failing to create a privilege log or to review the records on an ongoing basis. But although the State and F.L. make these concessions, they contend that Mr. Chadwick cannot sidestep conventions of appellate practice. The State opines that Mr. Chadwick's appellate counsel is not entitled to broader access to privileged records than trial counsel. F.L. argues that under longstanding appellate principles, Mr. Chadwick must rest on

---

[25] The approach followed in this case is consistent with our directive in *State v. Cramer* that the defendant "should have requested that the court seal and retain the records [that were subject to in camera review] as part of the record." 2002 UT 9, ¶ 27, 44 P.3d 690.

arguments advanced below rather than requesting a de novo balancing of interests. She contends that Mr. Chadwick must point to facts in the record developed below,[26] and she questions whether he preserved the issues he raises on appeal.

¶36 We agree with the State and F.L. and conclude that the fact that the records were sealed under the trial court's stipulated order weighs in favor of keeping the records sealed on appeal. At this point, we defer to the parties' agreement below concerning the scope of the court's in camera review. While Mr. Chadwick is entitled to challenge the trial court's findings and determinations, he must prepare his merits brief using the record established below, without the benefit of examining the sealed records.

*B. Mr. Chadwick's Counsel Can Fulfill Its Obligations on Appeal Without Examining the Sealed Records*

¶37 Mr. Chadwick identifies certain rights that he claims favor us granting him access to F.L.'s therapy records for purposes of preparing an appellate brief. He asserts that he is entitled to receive notice of important claims, rights, and obligations relevant to his case, and he contends that his current inability to access the sealed records violates his right to appeal, as well as his due process rights to fundamental fairness and effective assistance of counsel.

¶38 First, Mr. Chadwick argues that his need to receive "notice of important claims, rights[,] and obligations" is a factor supporting his access to the records.[27] That entitlement to notice, he argues, is buttressed by rule 14(b) of the Utah Rules of Criminal Procedure and rule 506(d) of the Utah Rules of Evidence. In his view, the balance struck by rule 14(b) substantiates his request for notice of important claims, rights, and obligations because the rule "permits subpoena and review of private records that are material to the case, while permitting a court to 'issue any reasonable order to protect the privacy of the victim or to limit dissemination of disclosed records.'"[28] And he explains that rule 506(d) strikes a similar balance by stating that "[n]o privilege exists . . . [f]or communications

---

[26] (Citing *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 16, 17 P.3d 1110 ("As an appellate court, our power of review is strictly limited to the record presented on appeal." (cleaned up)).)

[27] (Quoting UTAH R. JUD. ADMIN. 4-202(1)(F).)

[28] (Quoting UTAH R. CRIM. P. 14(b)(6).)

relevant to an issue of the physical, mental, or emotional condition of the patient . . . in any proceeding in which that condition is an element of any claim or defense."[29] Mr. Chadwick thus urges that his right to present a defense outweighs F.L.'s privacy interest in her therapy records.

¶39 Next, Mr. Chadwick exhorts us to consider his constitutional right to appeal as a factor favoring his access to F.L.'s records. He accurately points out that the right to appeal derives from the state constitution, statute, and caselaw.[30]

¶40 Finally, Mr. Chadwick contends that his due process rights to fundamental fairness and effective assistance of counsel favor his access to the records on appeal. As he explains, appellate counsel is obligated to "play the role of an active advocate, rather than a mere friend of the court";[31] "to fully state the facts and arguments"; "to fully brief the issues on appeal 'with reasoned analysis supported by citations to legal authority and the record'";[32] and "to zealously advocate" on the client's behalf.[33]

¶41 Mr. Chadwick laments that his right to appeal with the effective assistance of counsel has been "functionally nullified" because, he reasons, without access to F.L.'s therapy records, he cannot point to relevant portions of those records; instead, he is forced to argue vaguely that a review of the records would demonstrate their materiality. So he seeks access to the sealed records, explaining that it would be impossible to resolve the question of whether the currently sealed records are material to his case without his review of the records.

---

[29] (Quoting UTAH R. EVID. 506(d)(1)(A).)

[30] (Citing UTAH CONST. art. I, § 12 ("In criminal prosecutions the accused shall have . . . the right to appeal in all cases."); UTAH CODE § 77-18a-1(1) (outlining when a defendant may appeal "as a matter of right"); *Bruner v. Carver*, 920 P.2d 1153, 1155 (Utah 1996) ("[T]he right of a criminal defendant to pursue a direct appeal is a fundamental constitutional right.").)

[31] (Quoting *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).)

[32] (Quoting UTAH R. APP. P. 24(a)(8).)

[33] (Quoting *State v. Archibeque*, 2022 UT 18, ¶ 15, 509 P.3d 768 (cleaned up).)

¶42 Although it is true that the scope of the arguments Mr. Chadwick can make on appeal may be restricted by his inability to access the records he seeks, that limitation alone does not entitle him to examine the records. We have held that such a limitation does not infringe the right to appeal when "it does not foreclose an appeal but only narrows the issues that may be raised on appeal."[34]

¶43 Caselaw from the United States Supreme Court further indicates that the rights Mr. Chadwick invokes do not justify his access to the sealed records. In *Pennsylvania v. Ritchie,*[35] the Court balanced a defendant's (Ritchie's) right to examine confidential records that were unavailable to him against the victim's and the State's opposing interests. There, Ritchie was charged with crimes involving the sexual abuse of a minor.[36] He sought access to the victim's Children and Youth Services (CYS) records, claiming they might contain exculpatory evidence.[37] The trial court declined to order CYS to turn over the records, and Ritchie appealed, invoking his constitutional rights.[38] The Supreme Court acknowledged that because neither the parties nor the court had examined the full CYS file, it was impossible to know on appeal whether the records bore on Ritchie's innocence.[39] It determined that Ritchie was "entitled to have the CYS file reviewed by the trial court to determine whether it contain[ed] information that probably would have changed the outcome of his trial."[40] But the Court also noted that "[a]lthough the eye of an advocate may be helpful to a defendant in ferreting out information," "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance."[41] Accordingly, the Court denied Ritchie's request to review the CYS

---

[34] *State v. Rettig*, 2017 UT 83, ¶ 22, 416 P.3d 520.

[35] 480 U.S. 39 (1987).

[36] *Id.* at 43.

[37] *Id.* at 43–44.

[38] *Id.* at 44–45.

[39] *Id.* at 57.

[40] *Id.* at 58.

[41] *Id.* at 59.

records, concluding instead that Ritchie's constitutional rights would be "protected fully" by the trial court's in camera review.[42]

¶44 The interests at stake here coincide with those in *Ritchie*. Accordingly, we adhere to the balance struck by the United States Supreme Court and conclude that Mr. Chadwick's rights are protected fully by the trial court's in camera review, coupled with his right to appeal the trial court's decisions under conventional appellate principles.

*C. F.L.'s and the State's Interests in the Privacy of F.L.'s Therapy Records Weigh in Favor of Keeping the Records Sealed During Appellate Review*

¶45 The State and F.L. urge us to consider their interests in F.L.'s records. Mr. Chadwick acknowledges the concerns raised by F.L. and the State but suggests they can be mitigated.

¶46 The Utah Code of Judicial Administration provides a list of "interests served by non-public court records."[43] Those interests include protecting "personal privacy" as well as protecting "non-parties participating in the court process, such as victims, witnesses, and jurors."[44] F.L.'s privacy interest includes her rights under the VRA, which provides that crime victims are entitled "[t]o be treated with fairness, respect, and dignity, and to be free from harassment and abuse throughout the criminal justice process."[45]

¶47 In earlier proceedings before this court in Mr. Chadwick's case, we acknowledged F.L.'s privacy interest in her records, explaining that "crime victims have weighty interests in the privacy of their therapy records."[46] Indeed, in *State v. Cramer*, we expressly acknowledged victims' "privacy interests in privileged mental health records."[47] And United States Supreme Court caselaw further

---

[42] *Id.* at 60.

[43] UTAH R. JUD. ADMIN. 4-202(2).

[44] *Id.* R. 4-202(2)(A), (E).

[45] UTAH CONST. art. I, § 28(1)(a); *see also Blake*, 2002 UT 113, ¶ 16 (explaining that the VRA was enacted, in part, "in response to an increasing recognition that . . . [v]ictims who do survive their attack, and are brave enough to come forward, turn to their government expecting it to protect the innocent." (cleaned up)).

[46] *F.L. v. Court of Appeals*, 2022 UT 32, ¶ 42, 515 P.3d 421.

[47] 2002 UT 9, ¶ 22, 44 P.3d 690.

confirms our decision to safeguard F.L.'s personal privacy interest in her records, as well as the State's interest in protecting records like the ones at issue here. In *Ritchie*, the Court refused to grant defense counsel access to the CYS records, stating:

> To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child-abuse information. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse. . . . It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality.[48]

¶48 Under the therapist-patient privilege, the State has a compelling interest in protecting the confidentiality of F.L.'s mental health records.[49] There are, of course, exceptions to the privilege, including "situations in which otherwise privileged communications" between crime victims and therapists "might be subject to *in camera* review and disclosure."[50] Our caselaw has developed a "stringent test" for demonstrating an exception to the therapist-patient privilege, and "[t]he difficulty in meeting th[e] test is deliberate and prudent in light of the sensitivity of these types of records and the worsening of under-reporting problems in the absence of a strong privilege."[51]

¶49 We have also acknowledged the potentially "chilling effect of piercing" the relationship between therapist and patient.[52] And the United States Supreme Court has warned of this potentially chilling effect, stating: "Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of

---

[48] *Ritchie*, 480 U.S. 39 at 60.

[49] *See Blake*, 2002 UT 113, ¶ 18 (describing the privilege as "reflecting [a] good policy choice[], fostering candor in important relationships by promising protection of confidential disclosures" (cleaned up)).

[50] *Id.* ¶ 19.

[51] *Id.*

[52] *Id.* ¶ 5.

confidential communications made during counseling sessions may cause embarrassment or disgrace. . . . [T]he mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment."[53] The strong policy interests, described in the VRA and caselaw, in protecting F.L.'s rights as a victim and in encouraging candor in confidential communications between therapists and patients therefore weigh against granting Mr. Chadwick access to F.L.'s records for purposes of preparing an appellate brief.

¶50 In sum, the balance of interests weighs against Mr. Chadwick's access to F.L.'s sealed therapy records for purposes of preparing an appellate brief. The trial court's sealing of the records resulted from a stipulated order that Mr. Chadwick himself prepared; Mr. Chadwick need not review the sealed records to challenge the trial court's determinations; and F.L.'s personal interest and the State's institutional interest in protecting the records tip the scale against Mr. Chadwick's access to the records on appeal.

## II. There Is No Reasonable Alternative to the Records' Closure Sufficient to Protect F.L.'s and the State's Interests

¶51 Having decided that the balance of the interests favors keeping F.L.'s confidential therapy records sealed during appellate review, we must determine whether any reasonable alternative exists that adequately protects the interests favoring closure.[54]

¶52 Mr. Chadwick observes that we could elect to perform our own in camera review of F.L.'s therapy records, but he discounts that approach as being "impractical and unconstitutional."[55] Instead, he

---

[53] *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996).

[54] *See* UTAH R. JUD. ADMIN. 4-202.04(6)(C) (2016) ("[I]f the record is ordered closed, [the court must] determine there are no reasonable alternatives to closure sufficient to protect the interests favoring closure.").

[55] Although we do not rule on the constitutionality or appropriateness of this approach, we note that at least one state appellate court has conducted its own in camera review of privileged records when reviewing a challenge to a trial court's materiality determination. *See, e.g.*, *People v. Frost*, 5 P.3d 317, 323–24 (Colo. App. 1999) (conducting appellate in camera review of confidential records and agreeing "with the trial court's conclusion that the non-disclosed documents were not relevant to any issue before the court").

recommends we grant the parties access to the records while imposing "reasonable conditions" on that access. He proposes that we restrict who may see the records (e.g., counsel only), specify how the records are to be stored and handled, prohibit the unauthorized dissemination of the records, and/or require the filing of public and private briefs. According to Mr. Chadwick, the conditions he proposes protect F.L.'s and the State's interests in the records without depriving him of his rights as an appellant.

¶53 We conclude that these alternative paths—conducting our own review of the records or granting Mr. Chadwick limited access to them—are inconsistent with the interests favoring closure, including F.L.'s privacy interest in her records. In addition, we agree with F.L. that granting even limited records access to Mr. Chadwick at this point in his appeal would risk creating satellite litigation in all confidential records cases. Rather than permitting litigants to request access to sealed records before arguing the merits of their appeal—thus necessitating the development of jurisprudence balancing the parties' interests in each case—the simpler approach is to allow litigants to pursue an appeal by challenging the lower court's decisions based on the available court record.

¶54 Again, we reiterate that Mr. Chadwick is not without options on appeal. He is entitled to argue that he was prejudicially harmed by errors the trial court made. If he is successful, the result could be that we remand to the trial court for an additional in camera review. But we conclude that the conditions Mr. Chadwick proposes do not sufficiently protect the interests we have identified in favor of keeping the records sealed during appellate review.

## Conclusion

¶55 We decline to grant Mr. Chadwick access to the records he seeks. He must proceed on appeal by making arguments based on the record established below.

––––––––––––